David **COLLINS**, Administrator, Estate of Thomas J. Collins, Deceased, and Mrs. E. T. Collins, Appellants,

v.

Wallace **VERNON** et al., Respondents.

No. KCD 26056.

Missouri Court of Appeals, Kansas City District.

July 1, 1974.

Hendren & Andrae, Alex Bartlett, Jefferson City, for appellants.

Norman J. Williams, Eldon, Edwards, Seigfreid, Runge & Hodge, Inc., Jerome W. Seigfreid, Mexico, for respondents.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD, WASSERSTROM and SOMERVILLE, JJ.

SWOFFORD, Judge.

This is an appeal from a judgment wherein the court below sustained defendants' motion to dismiss plaintiffs' Second Amended Petition for failure to state a cause of action. Plaintiffs did not plead further and therefore the pertinent record before us on appeal consists solely of the Second Amended Petition and the defendants' Separate Motion to Dismiss.[1]

The following facts appear from the record:

The defendant, City Council of Eldon, a fourth class city, passed an ordinance which authorized the sale of approximately ten (10) acres of land, which had been used as an airport and designated as a "park". The defendant Eldon Food Corporation bid $200,200.00 for the land at a public offering and the bid was accepted.

The plaintiffs object to the proposed sale of the land upon the grounds that such ac-

---

1. The defendants filed separate motions to make more definite and certain and motions to strike. These were overruled as moot by the court below when the motion to dismiss was sustained.

tion was illegal and they filed a petition in the Circuit Court seeking an order of prohibition, an injunction against such sale, and a declaration that such sale was illegal, or in the event of such sale, an order of reconveyance of the property to the City of Eldon, or to impose a constructive trust or equitable lien upon the property. The Second Amended Petition named as defendants the City of Eldon, the Mayor, the members of the City Council, and the Eldon Food Corporation. The petition stated that the plaintiffs were residents, citizens and taxpayers of the City of Eldon, but they do not claim any title or ownership to the land involved.

The defendants moved to dismiss for the reason that the Second Amended Petition failed to state a claim upon which relief could be granted and because the Second Amended Petition was filed out of time allowed by the court to file such petition. In sustaining defendants' motion, the court did not indicate on which basis the motion was sustained. That portion of the Motion to Dismiss alleging that the Second Amended Petition was filed out of time is not before this court. Both the court below and counsel treated such Second Amended Petition as properly filed. Since neither party briefed this issue on appeal, it is not before us for our consideration.

The plaintiffs urge reversal on the following grounds: *First*, it was error to dismiss the petition because the plaintiffs had standing to sue. *Second,* the proposed sale was illegal because the property had been dedicated to airport and park purposes; the City lacked statutory authority to sell the property; such plan is illegal because the property is under the exclusive control of the Park Board of Eldon and not the City Council; and the City does not have clear title to all of the property in question.

This appeal was originally heard in Division No. 2 of this Court and an opinion

adopted on February 4, 1974, affirming the judgment, without dissent. On February 11, 1974 the Supreme Court handed down a decision in the case of John F. Weeks v. Missouri Pacific R. R. Co., 505 S.W.2d 33 (Mo.1974) wherein the title to certain abandoned railway property in Eldon, Missouri was directly in issue and which decision it was felt might have some bearing on the case before us. Also, the appellants had proffered as a part of their Suggestions in Support of Motion for Rehearing or in the Alternative to Transfer to the Supreme Court, the petitions and answers in pending litigation in the Circuit Court of Miller County, Missouri, together with a reproduction of a newspaper and photographs published in the "Eldon Advertiser" on December 7, 1944.

We granted the motion for rehearing and transferred the case to the court en banc, so as to permit the parties to brief and argue their positions as to the effect of *Weeks* and of the above-mentioned documents proffered by appellants in their Suggestions. The case was reargued and resubmitted on May 20, 1974. In the interim, our order issued permitting the substitution of the administrator of one of the original plaintiffs, Thomas J. Collins.

We have concluded that the case of Weeks v. Missouri Pacific R. R. Co., supra, is not decisive of this case. In *Weeks*, the *title* to a portion of the abandoned railroad right of way through the City of Eldon, Missouri was directly in issue in a suit between the heirs of the original grantors who claimed part of this property by reversion and part as abutting landowners. Intervenors, were other abutting landowners. The case was tried and upon the evidence adduced the trial court found generally for the defendant and against the plaintiffs, thus denying title to plaintiffs, and sustained intervenors' claim as abutting owners.

It is obvious from the *Weeks* opinion that only part of the abandoned railroad right of way was there involved. Upon

appeal the Supreme Court affirmed and remanded with directions to permit other abutting landowners who might claim an interest in the title to the land involved and awarded to intervenors, to, in turn, intervene to assert such claims. In so doing, the court held, in essence, that the grant of land to be used for railroad purposes was a grant of an easement and not a fee and that upon the abandonment of such right of way no right of reversion to the heirs of the grantor existed but that the *then* abutting landowners succeeded to the abandoned property. While these principles are sound and are applicable to the land involved in the case before us, there is nothing apparent in *Weeks* that the *same* land was in any way involved. We do not consider *Weeks* in any way determinative of the issues involved in this action. We are here concerned with problems of *pleading*, not *proof*.

■ The documents attached to and other factual matters set forth in the appellants' suggestions were not pleaded nor before the court below; are not a part of the transcript on appeal herein; and cannot be considered by us in our decision. The cases which appellants cite as authority for us to do so, are clearly distinguishable. In State v. Public Service Commission, 291 S.W.2d 95 (Mo. banc 1956) it was held that judicial notice could be taken of orders of the commission in other cases involving related or interdependent problems. In the case of Sierk v. Reynolds, 484 S.W.2d 675, 682 (Mo.App.1972) and Hall v. Smith, 355 S.W.2d 52 (Mo.1962), the doctrine of *res judicata* was involved and it was held that the court could take judicial notice of prior judgments affecting the application of this doctrine. This theory, of course, is the heart and sinew of *res judicata*. No court orders or judgments affecting the merits of the matter before us are involved, but merely pleadings in other pending litigation and newspaper material. We seek in vain for any application of such material appropriate to this case or record.

The other matter reargued and again emphasized by the plaintiffs is that the City of Eldon had no title to part of the land sought to be conveyed. This element of the case will be discussed later in this opinion.

The threshold issue in this case is whether the plaintiffs have standing to bring and maintain this action.

■ It is a well-recognized rule that an aggrieved taxpayer may institute a suit against a governmental unit to seek relief for an alleged illegal or improper act. This rule was first recognized in the jurisprudence of this state in Newmeyer v. Mo. & Miss. R. R. Co., 52 Mo. 81 (1873). The rationale for such a rule is that a taxpayer has an "equitable ownership" of public funds and any illegal expenditure of such funds will subject the taxpayer to a liability to " . . . replenish any deficiency resulting from the misappropriation." Everett v. County of Clinton, 282 S.W.2d 30, 35 (Mo.1955).

Since the plaintiffs made no claim of ownership of the property involved, it follows then they were required to plead with specificity such damages in their posture as taxpayers. In Fugate v. McManama, 50 Mo.App. 39 (1892), two plaintiffs sought injunctive relief against the individual members of the school board to prevent them from opening a separate school. The court affirmed the judgment for the defendants " . . . for the reason that the plaintiffs failed to show the extent of their interests, which (if at all) were injuriously affected by the irregular action of the directors." loc. cit. 42.

Such interests may be in the form of an increased tax burden on a plaintiff to replenish the public funds illegally dissipated. Hight v. City of Harrisonville, 328 Mo. 549, 41 S.W.2d 155 (banc 1931). See Smith v. Hendricks, 136 S.W.2d 449, 454 (Mo.App.1939), where a judgment for defendant was affirmed because the plaintiff

failed to show special injury in the form of an increased tax burden.

However, an appellate court can look beyond the bare facts of the petition to determine if the ultimate fact of damages arises as a necessary conclusion from facts stated in the petition. Miller v. Ste. Genevieve County, 358 S.W.2d 28 (Mo. 1962). In Castilo v. State Highway Commission, 312 Mo. 244, 279 S.W. 673 (banc 1925), the court said, " . . . the necessary conclusion from the facts pleaded is that the burden of taxation on resident taxpaying citizens will be increased . . . . Failure to allege the ultimate fact that plaintiffs' taxes will be increased when this conclusion *necessarily arises from facts sufficiently pleaded* is not material." l.c. 675 (emphasis added)

In Miller v. City of St. Joseph, 485 S.W.2d 688 (Mo.App.1972), a fireman, a citizen and taxpayer of the City, brought an action to enjoin the City from entering into oral agreements with industrial and residential groups outside the City limits to provide them with fire protection. In affirming a judgment for the defendant City, the Court said:

> "There has been no proof that plaintiff will lose any insurance protection; that there could be [successful] lawsuits filed against him individually; or that the City could be liable as a result of loss of its immunity, which could result in greater taxes against plaintiff. Importantly, there was no proof that the City's activities in responding to 40 or 50 calls per annum caused it to incur expenses in excess of its receipts of payments under its informal arrangements for fire protection outside its boundaries, so as to constitute an illegal expenditure of public money." loc. cit. 692

An examination of the record of this case fails to reveal that the plaintiffs alleged any damage or injury to themselves as taxpayers in the way of increased tax burdens. The only mention of possible injury is contained in the sixth paragraph of the petition, wherein it was stated that the City of Eldon could not give a warranty deed for some of the property and "would of necessity be subjected to potential liability on the warranties of title." Such a conclusory statement is inadequate to serve as an allegation of injury to these plaintiffs. Castilo v. State Highway Commission, supra.

It is also worthy of note that in the cases cited in the briefs (and those found through independent research) all involve an *expenditure* of public funds. The record in this case fails to reveal that the City of Eldon will expend public funds in connection with the proposed sale. Indeed, it appears that the public treasury will be substantially *increased* by the amount of the sale price. Correspondingly, the "equity" of all the taxpayers (including that of the plaintiffs) will be increased rather than decreased by the sale.

The point made by the plaintiffs that by the proposed sale the City illegally seeks to convey land which it does not own, does not supply this basic deficiency. Essentially, the plaintiffs ask that we indulge in the presumptions that the City does not own all the land which it proposes to sell; that the City will, nevertheless, convey title to such property to the Eldon Food Corporation; and that in doing so, the City will sustain future damages on its warranty of title. We cannot and will not accept such conclusionary statements, indulge such presumptions, or draw such inferences.

We, therefore, hold that the plaintiffs did not plead sufficient elements of damage to maintain their position as proper parties plaintiffs.

The plaintiffs' Second Amended Petition is wholly inadequate and void of any proper allegations to place in issue the City's ti-

tle to the land proposed to be sold. On this, the only pertinent part of this petition states:

"* * * Plaintiffs state that the City of Eldon does not own the eastern one-half of said railway property which is included in the property which the City Council seeks to sell to defendant Eldon Food Corporation; * * *"

Rule 55.05, V.A.M.R., provides that "A pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement *of the facts* showing that the pleader is entitled to relief, * * *" (Emphasis supplied). We recognize our obligation to review this petition in a light most favorable to the plaintiffs and to consider *all facts* well pleaded therein as being admitted, and to give the plaintiff the benefit of all favorable inferences from such facts. Brennaman v. Andes and Roberts Brothers Construction Co., 506 S.W.2d 462 (Mo.App. 1974); Hall v. American Oil Co., 504 S.W.2d 313 (Mo.App.1974).

In the case of Robinson v. Field, 342 Mo. 778, 117 S.W.2d 308 (1938), the plaintiff filed a petition seeking to have a deed set aside. In discussing the sufficiency of the original petition, the court stated, 1.c. 117 S.W.2d 312:

"* * * this petition alleged that defendants 'in truth and in fact' had no title to the land. It was defective because it alleged conclusions instead of facts * * *"

See also: Henkel v. City of Pevely, 488 S.W.2d 949 (Mo.App.1972); State ex rel. State Tax Commission v. Briscoe, 451 S.W.2d 1 (Mo. banc 1970).

In the case of State ex rel. City of Creve Coeur v. St. Louis County, 369 S.W.2d 184 (Mo.1963) it was held that conclusions as to the legality, lawfulness, validity or constitutionality of a governmental action, unsupported by factual allegations, cannot be taken as true and must be disregarded in determining whether the plaintiff has stated a claim upon which relief can be granted. In Garner v. McCullough, 48 Mo. 318, 319 (1871), it was held that a statement that plaintiff was entitled to "the exclusive possession" of certain premises is a conclusion of law.

We hold that the negative statement in the petition before us, that the City of Eldon "did not own" part of the land here involved, is a mere conclusion of law and not of fact. The petition fails to state any factual basis for this conclusion, such as, deeds or some evidence of chain of title or declaration as to the alleged actual ownership. The allegation that such land was a part of an abandoned railroad right of way does not negative the possibility that the City could have acquired it by purchase, adverse possession or as an abutting landowner, or that someone else acquired it in one of those manners. No such facts were before the court below nor this court.

For these reasons, we conclude that the second amended petition was fatally defective and the motion to dismiss was properly sustained.

Neither are we persuaded by plaintiffs' argument that the proposed sale is illegal because the land in question had been "dedicated to Airport and park purposes." Nowhere in plaintiffs' petition is it alleged that the property was specifically dedicated to airport and park purposes. (Perhaps in an effort to correct this omission plaintiffs argue in their brief that "The method of dedication and the extent to which such dedication precludes a conversion to other usage is a matter which requires evidence to be heard by the trial court.") Rather, in paragraph four of the petition, it is alleged that "Said real property was dedicated and devoted to municipal and/or public purposes, and in particular the said real property has been *utilized* for park and airport purposes." (Emphasis added)

Such an allegation fails to bring to the attention of the court the manner in

which the "dedication" occurred. If the previous owner dedicated the property to airport and park uses, any subsequent attempt of the municipality to divert the property to some other use would be construed " . . . strictly in accordance with the terms of the grant." City of St. Louis v. Bedal, 394 S.W.2d 391, 396 (Mo. 1965). "However, where a park is established by statutory authority, or when a municipality purchases land and establishes a park thereon, the uses to which it may be put are much broader than where the land is dedicated by individuals to park purposes." Kirkwood v. City of St. Louis, 351 S.W.2d 781, 784 (Mo.1961). See also: School District of Kansas City v. Kansas City, 382 S.W.2d 688, 693 (Mo. banc 1964).

■ Plaintiffs next state that the City of Eldon has no statutory authority to sell airport property. They assert: (1) A municipal corporation must have specific statutory authority before it can sell real property; (2) although Section 305.170 RSMo 1969, V.A.M.S., authorizes municipal corporations to *purchase* property for use as an airport, the statutes do not give such corporations the authority to *sell* airport property; and (3) the general authority contained in Sections 79.010 to 79.390 RSMo 1969, V.A.M.S., of fourth class cities to purchase and sell real property cannot be relied on as authority because the Legislature gave a specific grant of authority to purchase airport property in Section 305.170, supra.

This point, too, must be ruled against the plaintiffs. Section 79.110 RSMo 1969, V.A.M.S., entrusts to the mayor and board of aldermen of fourth class cities the duty to govern the "care, management and control of the city and its finances." Toward this end, the Legislature gave such municipal officers the "power to enact and ordain *any and all ordinance*s . . . *as they shall deem expedient* for the good government of the city, the preservation of peace and good order, *the benefit of trade and commerce* and the health of the inhabitants thereof, *and such other ordinances, rules and regulations as may be deemed necessary* to carry such powers into effect . . . " Section 79.110, supra (emphasis added). Further, Section 79.390, RSMo 1969, V.A.M.S., gives to the Board of Aldermen of fourth class cities the power to " . . . purchase or sell all public parks or *other public grounds* belonging to the city . . . " Section 305.170 RSMo 1969, V.A.M.S., provides that the "local legislative body of any city" is authorized to acquire, own, control, maintain, operate and regulate airports and landing fields. It is inherent in the statute that the power to purchase includes the power to sell. It is entirely proper to assume that when the Legislature passed Section 305.170, it knew of the existence of broad powers granted to fourth class cities in Section 79.010, supra.

■ The plaintiffs next assert that the City Council cannot sell the property in question because the land is under "the exclusive control of the Park Board and not the City Council." This point is without merit because the statutes dictate that the members of the Park Board are appointed (and can be removed) by the mayor with the approval of the City Council and it performs administrative duties only. See Sections 90.520 to 90.550, RSMo 1969 V.A.M.S. Certainly, the creation of such a Park Board does not and should not divest the City of any of its fundamental powers and obligations to buy and sell city property, as specifically granted to a city of this class in the statutes above noted.

For the reasons herein stated, the judgment is hereby affirmed.

All concur.