W.R. GRACE & COMPANY, Appellant,

v.

William HUGHLETT, et al., Respondents.

Nos. 68242, 68243 and 68244.

Supreme Court of Missouri, En Banc.

April 14, 1987.

Rehearing Denied May 19, 1987.

Donald S. Hilleary, Clayton, for appellant.

Terri Spencer Rager White, Asst. Pros. Atty., Carthage, for respondents.

RENDLEN, Judge.

The W.R. Grace & Company (appellant) brought separate suits (consolidated for decision in this opinion) challenging the "manufacturers tax" as determined by annual assessments for the three tax years 1980, 1981 and 1982 under the terms of § 150.-310.1, RSMo 1978 (hereinafter § 150.310.-1).[1] Appellant alleged that "the manufacturing tax imposed pursuant to § 150.300 et seq. was unconstitutional in violation of Article X § 3 of the Missouri Constitution and the equal protection clause of the Fourteenth Amendment to the United States Constitution by reason of prohibited exemptions in violation of Article X § 6 of the Constitution." (References to legal files omitted.) The issue confronting us is whether the authorizing of "exemptions" for certain types of tangible personal property violated the exemption prohibition of Mo. Const. art. X, § 6 (1945 amended 1972)[2] resulting in a lack of tax uniformity

---

**1.** Section 150.310.1, RSMo 1978 provided:

**Manufacturers to be licensed and taxed—license period—exceptions.—1.** Every manufacturer in this state shall be licensed and taxed on all raw material and finished products, as well as all the tools, machinery and appliances used by them, in the same manner as provided by law for the taxing and licensing of merchants; and no county, city, town, township, or municipal authority thereof, shall ever levy any greater amount of tax against a manufacturer than is levied against merchants for the same period.

**2.** Mo. Const. art. X, § 6 (1945 amended 1972) provided:

**Property exempt from taxation.** All property, real and personal, of the state, counties and other political subdivisions, and nonprofit cemeteries, shall be exempt from taxation; and all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely charitable, or for agricultural and horticultural societies may be exempted from taxation by general law. In addition to the above, household goods, furniture, wearing apparel and articles of personal use and adornment owned and used by a person in his home or dwelling place may be exempt from taxation by general law but any such law may provide for approximate restitution to the respective political subdivisions of revenues lost by reason of the exemption. *All laws exempting from taxation property other than the property enumerated in this Article, shall be void.* (Emphasis added.)

The 1982 amendment of Mo. Const. art. X, § 6 (1945 amended 1972) now § 6.1, approved August 3, 1982 and effective September 2 of that year added the following:

all personal property held as industrial inventories, including raw materials, work in progress and finished work on hand, by manufacturers and refiners, and all personal property held as goods, wares, merchandise, stock

violative of Mo. Const. art. X, § 3 (1945)[3] (hereinafter uniformity clause) and the equal protection clause of the fourteenth amendment.

Appellant contested taxes collected under § 150.310.1 by Jasper County, aggregating $9,583.00 for 1980, $8,734.80 for 1981 and $10,0001.00 for 1982. William Hughlett, named defendant in each of the actions in his official capacity as Collector of Revenue for Jasper County, was responsible under § 150.310.1 for the collection of taxes from appellant "on all raw material and finished products, as well as [on] all the tools, machinery and appliances used by [it]...." Appellant sought a refund of the taxes paid plus interest as well as attorney's fees and costs incurred in bringing the actions.

in trade or inventory for resale by distributors, wholesalers, or retail merchants or establishments shall be exempt from taxation. The 1982 amendment further provided that [t]he provisions of this section exempting certain personal property of manufacturers, refiners, distributors, wholesalers, and retail merchants and establishments from taxation shall become effective, unless otherwise provided by law, in each county on January 1 of the year in which that county completes its first general reassessment as defined by law. From this it appears that problems such as those concerning the taxes assessed in the cases at bar will not recur.

3. Mo. Const. art. X, § 3 (1945) in pertinent part provided:

Taxes may be levied and collected for public purposes only, and *shall be uniform upon the same class of subjects* within the territorial limits of the authority levying the tax. (Emphasis added.)

The uniformity clause, Mo. Const. art. X, § 3 (1945 amended 1982), in pertinent part now provides:

Taxes may be levied and collected for public purposes only, and *shall be uniform upon the same class or subclass of subjects* within the territorial limits of the authority levying the tax. (Emphasis added.)

4. Section 148.140, RSMo 1978 (RSMo 1986 unchanged) provided:

**Credit institutions subject to annual tax—rate—credits.**—1. Every credit institution as herein defined shall be subject to an annual tax for *the privilege of exercising its franchise within the state of Missouri, according to and measured by its net income for the preceding calendar year.*

The trial court rejected appellant's contention that several statutes created unconstitutional exemptions for other types of tangible personal property and concluded that neither a violation of the uniformity clause nor a denial of equal protection had occurred. The statutes which appellant claimed violated the exemption prohibition of Mo. Const. art. X, § 6 (1945 amended 1972) are: 1) the "substitute" net income based franchise tax of § 148.140, RSMo 1978[4] authorized in lieu of the tax on the tangible and intangible personal property of credit institutions by § 148.230, RSMo 1978;[5] 2) the 3 percent tax of the total amount received for car rentals by freight line companies "in lieu of" any ad valorem tax on their rental cars as provided for in § 152.030, RSMo 1978;[6] 3) the freedom from tax authorized for farm produce or

2. The rate of tax for each taxable year shall be seven percent of such net income.

3. Each taxpayer shall be entitled to credits against the tax imposed by sections 148.120 to 148.230 for all taxes paid to the state of Missouri or any political subdivision thereof during the relevant income period, other than taxes on real estate, contributions paid pursuant to the unemployment compensation tax law of Missouri and taxes imposed by said sections. (Emphasis added.)

5. Section 148.230, RSMo 1978 (RSMo 1986 unchanged) provided:

**Tax in lieu of certain other taxes.**—It is the purpose of the general assembly to *substitute* the tax provided by sections 148.120 to 148.-230 *for all taxes on all tangible and intangible personal property of all credit institutions* subject to the provisions of said sections and for all property taxes on the shares of such credit institution. (Emphasis added.)

6. Section 152.030, RSMo 1978 (RSMo 1986 unchanged) provided:

**Commission to inspect reports—tax in lieu of ad valorem tax.**—1. It shall be the duty of the commission to inspect and verify the reports specified in section 152.020.

2. A copy of such reports shall be furnished to the director of revenue not later than September first of each year, together with a statement of taxes against such freight line companies as represented by said reports in an amount *equal to three percent of the total amount received for car rentals by the freight line companies.*

3. Such tax shall be *in lieu of any ad valorem tax by the state or any subdivision thereof on the rental cars of freight line companies.* (Emphasis added.)

farm products by § 150.030, RSMo 1978;[7] and 4) the exclusion from tax conferred on the unmanufactured articles of commission merchants under § 150.040.1, RSMo 1978.[8] This case falls within our original appellate jurisdiction under Mo. Const. art. V, § 3.

For a party to have standing to challenge the constitutionality of a statute, he must demonstrate that he is *"adversely affected by the statute in question...."* *Ryder v. County of St. Charles*, 552 S.W.2d 705, 707 (Mo. banc 1977) (emphasis added). The rationale of this requirement is to assure that there is "a sufficient controversy between the parties [so] that the case will be adequately presented to the court." *Id.* The question of the sufficiency of a party's interest to challenge a statute which allegedly creates an unconstitutional tax exemption was given extensive consideration in our recent decision of *Arsenal Credit Union v. Giles*, 715 S.W.2d 918 (Mo. banc 1986). The plaintiffs in *Arsenal* were ten credit unions seeking recovery of personal property taxes paid by them to the City of St. Louis under protest. *Id.* at 919. It was the plaintiffs' position that § 148.620.3, RSMo Cum.Supp.1984 (hereinafter § 148.-620.3) substituted a tax on their net income for any tax liability they would otherwise be responsible for as to their tangible personal property. *Id.* at 919–20. Thus, it was argued that because they had paid the tax on their net income the City could not impose a tax on their tangible personal property because the legislature had intended by § 148.620.3 that their tangible

personal property was not to be taxed. *Id.* The City of St. Louis contended that the purported substitute tax in reality created an exemption which was unconstitutional because it was not authorized and was in effect prohibited by our constitution. *Id.* at 919. We held that the City of St. Louis was adversely affected and thus had standing to challenge the constitutionality of § 148.620.3 because if the statute were valid *the City would be barred from retaining the tangible personal property taxes* the plaintiffs had paid under protest. *Id.* at 920.

■ In the case at bar, *the taxpayer, rather than the taxing authority,* argues unconstitutional exemptions were conferred on *certain non-parties* which thereby produced violations of the uniformity clause and the fourteenth amendment. Clearly in *Arsenal,* the taxing authority would have been adversely affected if it were precluded from retaining the tangible personal property taxes paid under protest but in the present case we fail to see how appellant has been adversely affected because non-parties may have been granted the alleged unconstitutional exemptions. It assumes too much to say appellant has standing to raise the uniformity clause and fourteenth amendment challenges to an otherwise facially valid taxing statute because certain alleged unconstitutional exemptions may have been conferred by non-related statutes upon classes of taxpayers other than appellant. We fail to see how it can be said that appellant has been *"ad-*

---

7. Section 150.030, RSMo 1978 (RSMo 1986 unchanged) provided:

   **Farmer not merchant.**—Any farmer residing in this state who shall grow or process any article of *farm produce or farm products* on his farm is hereby authorized and permitted to vend, retail or wholesale said products, *free from license, fee or taxation* from any county or municipality, in any quantity he may choose, and by doing so shall not be considered a merchant; provided, he does not have a regular stand or place of business away from his farm; and provided further, that any such produce or products shall not be exempted from such health or police regulations as any community may require. (Emphasis added.)

8. Section 150.040.1 RSMo 1978 (RSMo 1986 varies in ways not impacting the disposition of these causes) provided:

   Merchants shall pay an ad valorem tax equal to that which is levied upon real estate, on the highest amount of all goods, wares and merchandise, except new motor vehicles, which they may have in their possession or under their control, whether owned by them or consigned to them for sale, at any time between the first Monday in January and the first Monday in April in each year; provided, that *no commission merchant shall be required to pay any tax on any unmanufactured article,* the growth or produce of this or any other state, which may have been consigned for sale, and in which he has no ownership or interest other than his commission. (Emphasis added.)

*versely affected by the statute[s] in question"* when those statutes would merely excuse the tax obligations of others. *Ryder, supra* at 707. (Emphasis added.) If we were to assume, while not deciding, that the statutes relied upon by appellant did in fact create unconstitutional exemptions, it does not follow that this would entitle appellant to a refund of the monies paid under a different and totally unrelated taxing statute. There has been a failure to demonstrate how such a finding would necessarily render § 150.310.1 invalid so as to relieve appellant of its obligations under the statute. The fact that appellant apparently would be liable for the tax obligations imposed under § 150.310.1, even assuming the invalidity of the challenged statutes, lends credence to our determination that appellant has not demonstrated it has been adversely affected by those statutes.

In addition, we have serious reservations as to whether the questions surrounding the constitutionality of the challenged statutes have been adequately presented to the Court. Though Jasper County espouses the position that the statutes relied upon by appellant did not provide unconstitutional exemptions, in a properly postured case the taxing authority might attack the validity of the referenced statutes as they apply to the taxpayers directly involved, as was the case in *Arsenal.*

In a quite different factual setting the Court, in *Civic League of St. Louis v. City of St. Louis,* 223 S.W. 891, 893 (Mo. 1920), acknowledged that status as a taxpayer can be sufficient to confer standing upon a party to challenge the expenditure of tax revenues if that party seeks to advance the "public interest." While appellant does not challenge the expenditure of tax revenues, as was the case in *Civic League,* but rather attacks the non-collection of taxes from other similarly situated taxpayers, it might well be argued that appellant has standing because the net result of granting an exemption to others would not seem to differ in substance from

the spending of tax monies, for in either situation the conduct complained of causes a diminution in the treasury of a taxing authority. However we conclude it cannot be said appellant meets the "public interest" test when in the final analysis it merely requests that because it has pointed up the purported invalidity of certain statutory exemptions [9] afforded others, it is thereby entitled to a finding that the manufacturers' tangible personal property tax is void.

For the reasons that appellant has failed to demonstrate how it has been adversely affected by the statutes at issue, as well as the other considerations discussed and the non-advancement of any "public interest," we find appellant lacks the requisite standing to make its constitutional challenges.

The judgment of the trial court is affirmed and the claim for attorney's fees is denied. *Arnold v. Edelman,* 392 S.W.2d 231, 239 (Mo.1965). Costs are assessed against appellant.

HIGGINS, C.J., and BILLINGS, BLACKMAR, DONNELLY and ROBERTSON, JJ., concur.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent.

If this appellant does not have standing to challenge the constitutionality of the manufacturers' tax law, §§ 150.300–.370, RSMo 1978, because he is not adversely affected by others receiving the benefit of the "in lieu of" provision, then who will ever have standing to challenge this statute? Certainly those who benefit from the more favorable "in lieu of" provisions will not assert their right to challenge the constitutionality of those statutes, nor will the taxing authority who collects under the manufacturers' tax law.

9. We do not decide and express no opinion as to the constitutionality of the statutes challenged by appellant.

It is apparent that appellant is an aggrieved taxpayer with standing to proceed in this action.

A taxpayer may institute a suit against a governmental unit to seek relief for an alleged illegal or improper act. *See Newmeyer v. Missouri & M.R.R. Co.*, 52 Mo. 81 (1873). "The rationale for such rule is that a taxpayer has an 'equitable ownership' of public funds and any illegal expenditure of such funds will subject the taxpayer to a liability to ... 'replenish any deficiency resulting from misappropriation.'" *Collins v. Vernon*, 512 S.W.2d 470, 413 (Mo.App. 1974) (citing *Everett v. County of Clinton*, 282 S.W.2d 30, 35 (Mo.1955)).

"To establish his standing by virtue of his status as a taxpayer of a governmental unit, the taxpayer must show some injury and damage to himself in that capacity." *Sommer v. City of St. Louis*, 631 S.W.2d 676, 679–80 (Mo.App.1982) (citing *Collins v. Vernon*, 512 S.W.2d at 473). "The injury may be alleged and proved in the form of an 'increased tax burden,' which the taxpayer claims will result from the governmental acts challenged." *Sommer*, 631 S.W.2d at 679; *See also Hight v. City of Harrisonville*, 41 S.W.2d 155 (Mo. banc 1931);. *Castilo v. State Highway Comm.*, 279 S.W. 673 (Mo. banc 1925); *Collins*, 512 S.W.2d at 473. Failure to allege such an increase is not necessarily fatal to the establishment of standing to sue as a taxpayer, *Castilo*, 279 S.W. 673 (Mo. banc 1925), for "the court may look beyond the petition to determine if the ultimate fact of damages arises as a necessary conclusion from facts stated in the petition." *Sommer*, 631 S.W.2d at 679 (citing *Collins*, 512 S.W.2d at 474). "The court may infer that the allegedly unconstitutional act requires an expenditure of public funds to be supplied by taxpayers, and so find that the plaintiff has standing." *Sommer*, 631 S.W.2d at 680 (citing *Russell v. Callaway County*, 575 S.W.2d 193, 195–96 (Mo. banc 1978) and *Collins*, 512 S.W.2d at 474)).

"For the purpose of analysis of standing ... a granting of a tax exemption does not differ significantly from an expenditure of public funds, since in either case the conduct complained of could result in the treasury's containing less money than it ought to." *Sommer*, 631 S.W.2d at 680. *See also Curchin v. Missouri Indus. Dev. Bd.*, 722 S.W.2d 930 (Mo. banc 1987). Therefore, when a plaintiff alleges in his petition that a state's power to tax under certain "in lieu of" standing has been exercised unconstitutionally, we look to see whether a loss of revenue to the state "arises as a necessary conclusion from facts stated in the petition" in order to determine whether this plaintiff has alleged an injury giving him standing to sue. *See also Sommer*, 631 S.W.2d at 680.

A net loss of revenue to the state coffer is a necessary result of the "in lieu of" taxes. Therefore, appellant, a taxpayer who must replenish the coffer, has established his standing to sue under Missouri law as a taxpayer adversely affected by the statutes at issue herein.

If the credit union "in lieu of" law is unconstitutional, *Arsenal Credit Union v. Giles*, 715 S.W.2d 918 (Mo. banc 1986), then all similar "in lieu of" taxing laws, not only as they relate to the personal property tax but also as they relate to income tax, are likewise unconstitutional. In view of this Court's decision in *Arsenal Credit Union*, I believe that the statute at issue herein should be held to be unconstitutional.