

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

TONY BETHMAN, et al.,             )        No. ED101896
                                  )
    Appellants,              )
                                  )        Appeal from the St. Charles County
vs.                               )        Circuit Court
                                  )
SALLY A. FAITH, et al.,           )        Honorable Jon A. Cunningham
                                  )
    Respondents.             )        Filed:  June 9, 2015

### Introduction

Plaintiffs Tony Bethmann and Justin Rinaldi appeal the dismissal of their petition for writ of mandamus and civil negligence action brought against the City of St. Charles (City) and numerous city officials (collectively, "Defendants").  In their mandamus action, Plaintiffs sought to compel city officials to collect allegedly unpaid license taxes from restaurant businesses in the City.  In their civil suit, Plaintiffs sought monetary damages against the City and city officials based on claims of negligence and respondeat superior.  On appeal, Plaintiffs challenge the trial court's dismissal of both actions for lack of standing and failure to state a claim.[1]  We affirm.

---

[1] Both cases have been consolidated on appeal.

## Factual Background

On December 30, 2013, Plaintiffs, on behalf of themselves and "others similarly situated," filed a petition for writ of mandamus against the Mayor of the City of St. Charles, the Director of Finance, and several Council Members. Specifically, Plaintiffs sought to compel the collection of allegedly unpaid license taxes "from all persons responsible for the payment of the same under Chapter 620 from January 1, 2009 to the present."[2] Plaintiffs alleged that Defendants had failed to properly collect license taxes from "all entities engaged in the business of a restaurant as defined in Chapter 620." Plaintiffs based their right to mandamus relief on their status as taxpayers, asserting that they had "a special interest, distinct from the general public, in the collection and expenditure of the funds generated by the [l]icense [t]ax." On December 31, 2013, Plaintiffs filed a "Class Action Petition,"[3] on behalf of themselves and "others similarly situated," against the City of St. Charles and numerous current and former city officials, seeking actual and punitive damages, attorney's fees, and costs based on claims of negligence and respondeat superior for "failing to properly and fully collect the [l]icense [t]ax" from 2009 to the present. The petition also included a 42 U.S.C. § 1983 claim, which was later dismissed by Plaintiffs.[4]

In January 2014, the trial court entered a preliminary order directing Defendants to "take all actions to collect the [l]icense [t]ax as provided for in Chapter 620 of the [o]rdinances of the

---

[2] Section 620.020(A) provides, in pertinent part, that, "[e]very person engaged in the business of a restaurant and selling prepared food or meals shall pay to the City a license tax of one percent (1%) of the gross receipts from sales of all goods and services transacted at retail upon the premises." Section 620.020(B) provides that the funds collected pursuant to this provision "shall be used exclusively to promote tourism, conventions and other related activities in the City" and that "[t]he funds shall be administered by the Saint Charles Convention and Visitors Commission[.]"

[3] A number of parties not named in the mandamus action were added to the civil suit, including Defendants City of St. Charles and multiple former city officials. Also, "Lloyd and Harry's Bar & Grill, LLC" and "Garfield & Lincoln, Inc." were added as named plaintiffs to the civil action.

[4] The civil suit was subsequently removed to the federal court before being remanded to the circuit court on Plaintiffs' own motion.

City of St. Charles . . . from all entities located in the City . . . which operate a 'restaurant' as defined in Chapter 620." Defendants filed a motion to quash the preliminary order and motions to dismiss both the mandamus action and the civil suit asserting that Plaintiffs lacked standing and failed to state a claim. Following a hearing and arguments by counsel, the trial court granted Defendants' motions and dismissed both actions based on the grounds alleged. Plaintiffs appeal.

## Standard of Review

Appellate review of a trial court's dismissal for lack of standing is *de novo*. *Missouri Pub. Serv. Comm'n v. Oneok, Inc*., 318 S.W.3d 134, 137 (Mo. App. W.D. 2009). The issue of standing is determined "as a matter of law on the basis of the petition, along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued, and resolve the issue as a matter of law on the basis of the undisputed facts." *Id*. (citation and quotation omitted). We will affirm the dismissal if it is supported by any ground raised in the motion to dismiss. *Dujakovich v. Carnahan*, 370 S.W.3d 574, 577 (Mo. banc 2012).

## Failure to Comply with Rule 84.04

As an initial matter, we note that Plaintiffs' opening brief contains deficiencies that do not comply with Rule 84.04.[5] Compliance with the Rule 84.04 briefing requirements is mandatory and a brief that fails to comply with the specified requirements preserves nothing for our review. *Osthus v. Countrylane Woods II Homeowners Ass'n*, 389 S.W.3d 712, 714 (Mo. App. E.D. 2012) (citation omitted). Failure to comply with Rule 84.04 also constitutes grounds for dismissal. *See Thornton v. City of Kirkwood*, 161 S.W.3d 916, 919 (Mo. App. E.D. 2005). Specifically, Rule 84.04(c) provides that "[t]he statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." *Rogers v. Hester ex rel. Mills*, 334 S.W.3d 528, 533 (Mo. App. S.D. 2010). Interspersing

---

[5] All rule references are to the Missouri Court Rules (2014), unless otherwise noted.

argument throughout the statement of facts violates Rule 84.04 (c). *Id*. at 534. As Defendants point out, Plaintiffs' "Statement of Facts" improperly contains legal conclusions and argument. Primarily, the deficiencies involve conclusory assertions that the duties imposed by the City Charter and Chapter 620 are "ministerial, not discretionary."

In addition, Plaintiffs' first point relied on is multifarious in violation of Rule 84.04(d)(1), in that, Plaintiffs have attempted to challenge two separate rulings in a single point relied on. *See Pool v. Farm Bureau Town & Country Ins*., 311 S.W.3d 895, 902 (Mo. App. S.D. 2010). The point also contains multiple grounds and legal issues (*e.g*., standing and failure to state a claim).[6] Separate legal issues must be set out in separate points relied on. *Law Offices of Gary Green, P.C. v. Morrissey*, 210 S.W.3d 421, 424 (Mo. App. S.D. 2006). Although these violations constitute grounds for dismissal, it is within this Court's discretion to consider the claims if the briefing deficiencies are not so serious as to impede appellate review. *See Bolt v. Giordano*, 310 S.W.3d 237, 241-42 (Mo. App. E.D. 2010). Because we find that the deficiencies in Plaintiffs' brief are not so serious as to impede the disposition of this appeal, we will review the claims.

### Discussion

Plaintiffs raise four points on appeal. In their first point, Plaintiffs claim the trial court erred in dismissing their actions against Defendants for lack of standing and failure to state a claim. In their second point, Plaintiffs contend that the trial court erred in dismissing their actions because Defendants are not shielded from liability by sovereign immunity, official immunity, or the public duty doctrine. In their third point, Plaintiffs claim the trial court erred in dismissing their civil negligence suit because they alleged facts sufficient to state a cause of

---

[6] A prerequisite to affording a party review on the merits is a determination whether they have standing to maintain their cause of action. *Metcalf & Eddy Services v. City of St. Charles*, 701 S.W.2d 497, 499 (Mo. App. E.D. 1985).

4

action based on claims of negligence and respondeat superior. In their fourth and final point, Plaintiffs claim the trial court erred in denying their request for class action certification in their mandamus suit. Because we find that Plaintiffs' first point regarding standing is dispositive of the entire appeal, we address it alone.

### *Standing*

In their first point, Plaintiffs claim the trial court erred in dismissing their petition for writ of mandamus and their civil negligence action for lack of standing and failure to state a claim. While Plaintiffs' point is somewhat hard to follow, they appear to argue that they have taxpayer standing for both actions and/or they have general standing to pursue the writ of mandamus because the duties imposed on Defendants are ministerial rather than discretionary.

In response, Defendants assert that the trial court did not err in dismissing Plaintiffs' actions because they lack standing to challenge the tax obligations and/or tax treatment of other taxpayers. Defendants also assert that Plaintiffs failed to state a cause of action in mandamus because the challenged duties are discretionary, not ministerial. We agree.

"Standing is an antecedent to the right to relief." *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011). The purpose of the standing doctrine is to ensure that litigation is brought only by the appropriate parties having a present, substantial interest in the outcome, *Hinton v. City of St. Joseph*, 889 S.W.2d 854, 858 (Mo. App. W.D. 1994), as well as to prevent parties from "creating controversies in matters in which they are not involved and which do not directly affect them[.]" *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. banc 2013) (citations and quotations omitted). Regardless of an action's merits, without standing, a court may not entertain the action. *Id.* If a party has no standing to bring a claim, the claim shall be dismissed because the

5

court lacks authority to determine its merits. *Weber v. St. Louis Cnty*, 342 S.W.3d 318, 323 (Mo. banc 2011).

The mere filing of a lawsuit is not enough to confer standing on a taxpayer. *Eastern Missouri Laborers Dist. Council v. St. Louis Cnty*, 781 S.W.2d 43, 46 (Mo. banc 1989). The party seeking relief must have a legally protectable interest at stake so as to be directly and adversely affected by the challenged action. *Id*. Missouri courts have long held that taxpayers have a legally protectable interest in the proper use and expenditure of tax dollars. *See, e.g., LeBeau v. Comm'rs of Franklin Cnty*, 422 S.W.3d 284 (Mo. banc 2014); *Ste. Genevieve School Dist. R-II v. Bd. of Alderman*, 66 S.W.3d 6 (Mo. banc 2002); *Eastern Missouri Laborers*, 781 S.W.2d at 46. Absent fraud or compelling circumstances, in order to establish taxpayer standing, the party seeking relief must demonstrate that one of three conditions exist: (1) a direct expenditure of funds generated through taxation; (2) an increased levy in taxes; or (3) a pecuniary loss caused by the challenged transaction of the municipality. *Id*. at 47.

In determining whether the trial court properly sustained Defendants' motions to dismiss both the mandamus action and the civil negligence suit, it is necessary to ascertain whether Plaintiffs' pleadings have properly identified the facts on which their claims rest. *See Berkowski v. St. Louis Cnty Bd. of Comm'rs*, 854 S.W.2d 819, 823 (Mo. App. E.D. 1993). Specifically, the petitions must contain "allegations of fact in support of each essential element of the cause sought to be pleaded." *Id*. Mere conclusions that are not supported by factual allegations are disregarded. *Id*. "Where a petition contains only conclusions and does not contain the ultimate facts or any allegations from which to infer those facts, a motion to dismiss is properly granted." *Id*.

6

*Writ of Mandamus*

In their petition for writ of mandamus, Plaintiffs alleged that Defendants were obligated to collect the license tax under Chapter 620 and that Plaintiffs had a "special interest, distinct from the general public, in the collection and expenditure of the funds generated by the [l]icense [t]ax." Plaintiffs also alleged that Defendants breached their duties by failing to collect the license tax from "all entities engaged in the business of a restaurant as defined by Chapter 620, section 620.010," and failing to collect the "proper amount" of license taxes from all entities engaged in the restaurant business. Plaintiffs further alleged that the failure to collect the unpaid license taxes resulted in a loss of revenue and that they have suffered injury "in the amount of the uncollected license taxes." In addition to class action certification, Plaintiffs requested a preliminary order directing Defendants to collect the unpaid license taxes, to audit the amount of unpaid taxes paid by each person from 2009 to the present, to collect the taxes and penalties, and to submit a report of such actions. Plaintiffs also requested attorney's fees and expenses.

While Plaintiffs have alleged they have standing to pursue their actions based on their status as taxpayers, they have failed to clearly specify in their opening brief or in their petitions on which of the requisite conditions they purport to rely to establish taxpayer standing.[7] Notwithstanding this deficiency, Plaintiffs assert that they have standing in accordance with the principles set forth in *LeBeau*, *Ste. Genevieve School Dist.*, and *Eastern Missouri Laborers*,

---

[7] Plaintiffs have not alleged or demonstrated an increased tax burden or an illegal expenditure of tax funds. In their Reply Brief, however, Plaintiffs assert for the first time that there is a "sufficient equivalent" of an expenditure of tax funds because Defendants' failure to collect the license tax "does not differ in substance from the spending of tax monies." We are not persuaded. Plaintiffs' conclusory assertion is not supported by the record or the facts of this case. Moreover, as noted by the Court in *Manzara*, an "expenditure of funds" is a "sum paid out," which did not occur here. 343 S.W.3d at 660. Plaintiffs also assert in their Reply Brief that the collection of the license tax is "for the public benefit" and the failure to fully collect the taxes means a "loss of tax dollars" to promote tourism, which affects "public interests." However, this assertion is inconsistent with the argument advanced by Plaintiffs in the second point of their opening brief where they maintain that the collection of license taxes is solely for the "special benefit and profit of the City to promote itself" and is not intended for the common good or to benefit the general populace.

*supra*. In *LeBeau*, taxpayers challenged the constitutionality of legislation authorizing the expenditure of tax funds to establish a county municipal court. 422 S.W.3d at 286. Specifically, the taxpayers alleged that the enabling legislation authorizing the court's establishment violated certain constitutional procedural requirements. *Id*. at 287. In determining that the unauthorized actions of the county officials involved an expenditure of public funds that implicated public interests, the Court concluded that the taxpayers had standing to proceed. *Id*. at 288-90.

Likewise, in *Ste. Genevieve School Dist.*, a school district and its superintendent challenged the legality of an ordinance adopted by the City of Ste. Genevieve to amend a redevelopment project without reconvening the tax increment financing (TIF) commission. 66 S.W.3d at 9. The Court found that the school district had standing conferred both by statute (based on its legally protected interest in appointing members to the TIF commission) and also based on its taxpayer status because the city's unauthorized actions would have deprived the school district of tax revenue. *Id*. at 10.

In *Eastern Missouri Laborers*, construction contractors brought suit against St. Louis County to enjoin the performance of a contract after the county failed to seek competitive bids in the selection of a construction manager to remodel and remove asbestos from county office buildings. 781 S.W.2d at 44. The plaintiff taxpayers claimed the county's actions violated state and county laws regarding competitive bidding and prevailing wage determination. *Id*. at 47. The Court agreed and concluded that the plaintiffs had standing to sue because the county's alleged unlawful actions would result in the expenditure of public funds. *Id*.

As the aforementioned cases demonstrate, Missouri courts have conferred taxpayer standing to enjoin the illegal expenditure of public funds and/or pecuniary losses attributable to the challenged government actions. *See, e.g., LeBeau*, 422 S.W.3d at 286; *Ste. Genevieve School*

8

*Dist*., 66 S.W.3d at 10; *Eastern Missouri Laborers*, 781 S.W.2d at 46. By contrast, in the instant case, Plaintiffs have failed to allege or demonstrate that Defendants' actions caused an illegal expenditure of tax funds, an increased tax burden, or a pecuniary loss attributable to the challenged conduct. Although Plaintiffs claim they are seeking to ensure that Defendants "conform with applicable laws" and that they have "an inherent right" to hold public officials accountable "for acts that adversely affect taxpayers," Plaintiffs have failed to demonstrate that they have been specifically injured or adversely affected by Defendants' alleged failure to "fully" and "properly" collect purportedly unpaid license taxes from business entities in the City. In fact, the record shows that Defendants have been collecting license tax revenue from applicable businesses in the City. It is evident that Plaintiffs are not contesting their own tax liabilities, nor do they seek to enjoin the City from improperly spending tax revenue collected under Chapter 620. Other than conclusory assertions that they have standing to pursue these actions, Plaintiffs have cited no authority where individual taxpayers whose own tax liabilities are not at issue have been permitted to compel a governmental entity to collect allegedly unpaid taxes from nonparty taxpayers. In fact, Missouri courts have rejected similar arguments and declined to confer taxpayer standing on individual plaintiffs in the absence of unlawful expenditures of public funds or pecuniary losses directly attributable to the challenged transaction. *See, e.g., Manzara v. State*, 343 S.W.3d 656 (Mo. banc 2011); *State ex rel. Kansas City Power & Light Co., v. McBeth*, 322 S.W.3d 525 (Mo banc 2010); *W.R. Grace & Co. v. Hughlett*, 729 S.W.2d 203 (Mo. banc 1987).

In *W.R. Grace*, the Missouri Supreme Court concluded that a taxpayer company did not have standing to challenge the county's collection of a "manufacturers tax," which granted "exemptions" to certain taxpayers for specific types of tangible personal property. 729 S.W.2d

9

at 205-06. The plaintiff argued that the exemptions resulted in a "lack of tax uniformity" in violation of the Missouri Constitution. *Id*. at 204-05. Before reaching the merits of the claim, the Court considered the issue of whether the taxpayer had standing to bring the action. Id. at 206. In affirming the trial court's judgment dismissing the action, the Court concluded that the taxpayer failed to demonstrate that it was adversely affected by the exemptions or that any public interests were implicated. The Court also noted that the plaintiff had not alleged that the challenged actions involved an improper expenditure of tax funds. *Id*. at 207. In concluding that the taxpayer lacked standing, the *W.R. Grace* court explained, in pertinent part:

> In the case at bar, the taxpayer, rather than the taxing authority, argues unconstitutional exemptions were conferred on certain non-parties which thereby produced violations of the uniformity clause and the fourteenth amendment. Clearly, in *Arsenal [Credit Union v. Giles*, 715 S.W.2d 918 (Mo. banc 1986)], the taxing authority would have been adversely affected if it were precluded from retaining the . . . taxes paid under protest but in the present case we fail to see how appellant has been adversely affected because non-parties may have been granted the alleged unconstitutional exemptions . . . We fail to see how it can be said that appellant has been *'adversely affected by the statute[s] in question' when those statutes would merely excuse the tax obligations of others*.

729 S.W.2d at 206-07 (citation omitted) (emphasis added and in original).

Similarly, in *McBeth*, the Missouri Supreme Court found that taxpayer plaintiffs lacked standing to challenge the property tax assessments of other taxpayers. 322 S.W.3d at 533-34. In reaching this conclusion, the Court specifically noted that, "[w]hether the taxpaying property owner is a corporation or a next-door neighbor . . . the principle that a third party is not permitted to challenge another's property tax assessment applies equally." *Id*. at 530. The Court also concluded that the plaintiffs were precluded from seeking mandamus relief because the duties imposed on the county assessor in determining the proper valuations and tax assessments were discretionary. *Id*. at 532.

10

More recently, in *Manzara*, the Missouri Supreme Court reaffirmed the standards for establishing taxpayer standing, particularly with regard to what constitutes a "direct expenditure of funds generated through taxation." 343 S.W.3d at 660. In *Manzara*, two taxpayers challenged the constitutional validity of a statute authorizing the issuance of certain tax credits to private individuals, associations and corporations, arguing that it was an illegal expenditure of tax funds. *Id*. at 657. In rejecting this argument, the Court explained, in part:

> An expenditure is 'a sum paid out.' Black's Law Dictionary 658 (9th ed. 2009). A fund is '[a] sum of money or other liquid assets.' *Id*. at 743. Generate is defined as 'to come into existence.' Webster's Third New International Dictionary at 945. Taxation is 'the means by which the state obtains the revenue required for its activities.' Black's Law Dictionary at 1598. Therefore, 'a direct expenditure of funds generated through taxation' is 'a sum paid out,' without any intervening agency or step, of money or other liquid assets that come into existence through the means by which the state obtains the revenue required for its activities.

343 S.W.3d at 660.

As the preceding cases make clear, Missouri courts have consistently denied taxpayer standing to private citizens for the purpose of challenging the tax obligations and/or tax assessments of other taxpayers. *See, e.g., Manzara*, 343 S.W.3d 656; *McBeth*, 322 S.W.3d 525 (Mo banc 2010); *W.R. Grace*, 729 S.W.2d 203. We find the Court's analysis in *McBeth* and *W.R. Grac*e particularly instructive. In both *McBeth* and *W.R. Grace*, the Court concluded that the plaintiffs lacked standing to challenge other taxpayers' tax obligations and/or tax assessments. Significantly, in *W.R. Grace*, the Court concluded that the taxpayer plaintiffs failed to show how they were "adversely affected" by the statutes in question, given the statutes would "merely excuse the tax obligations of others." *Id*. at 206-07 (citation omitted). Similarly, in the instant case, Plaintiffs have failed to demonstrate that they have been adversely affected by Defendants' alleged failure to collect license taxes from nonparty taxpayers.

11

Plaintiffs also claim they have standing to bring a mandamus action because the duties imposed on Defendants by the City Charter and the Chapter 620 ordinances are ministerial rather than discretionary. In response, Defendants assert that the challenged duties involve discretionary determinations that are not subject to attack by mandamus. We agree.

Mandamus is an extraordinary remedy that is available only under limited circumstances. *See Jones v. Carnahan*, 965 S.W.2d 209, 212 (Mo. App. W.D. 1998). A party seeking relief must allege and prove that he has a clear, unequivocal, and specific right to the relief sought. *Id.* at 213. Mandamus will not lie if the right to relief is doubtful. *Id.* "The purpose of the writ is to execute, not adjudicate . . . and [m]andamus cannot be used to control the judgment or discretion of a public official, nor can the writ be used to control a legislative act." *Brannum v. City of Poplar Bluff*, 439 S.W.3d 825, 830-31 (Mo. App. S.D. 2014). Matters involving the exercise of discretion are not subject to attack by mandamus. *State ex State ex rel. Cabool v. Tex. Cty. Bd. of Equalization*, 850 S.W.2d 102, 105 (Mo. banc 1993). As such, "[m]andamus will not lie to compel an act when its performance is discretionary." *McDonald v. City of Brentwood*, 66 S.W.3d 46, 51 (Mo. App. E.D. 2001). Rather, "[m]andamus will only issue when there is an unequivocal showing that the public official failed to perform a ministerial duty imposed by law." *State ex rel. Westside Dev. Co. v. Weatherby Lake*, 935 S.W.2d 634, 639 (Mo. App. W.D. 1996).

The determination of whether a public official's acts are ministerial or discretionary rests upon the facts of the case. *Green v. Lebanon R-III School Dist.*, 13 S.W.3d 278, 284 (Mo. banc 2000). Discretionary acts require the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued. *Id.* By contrast, ministerial acts require that certain duties be performed "upon a given state of facts, in a

12

prescribed manner, in obedience to the mandate of the legal authority, without regard to an employee's own judgment or opinion concerning the propriety of the act to be performed." *Id*. Where an ordinance involves a determination of facts, or a combination of law and facts, a discretionary act rather than a ministerial act is involved. *Jones*, 965 S.W.2d at 213. Because the "determination of facts or a combination of facts and law are quasi-judicial functions, and not ministerial, . . . this discretion cannot be coerced by the courts." *Id*.

In the instant case, Plaintiffs have failed to demonstrate a clear, unequivocal, and specific right that would entitle them to bring an action in mandamus. It is apparent from the record that the grievances lodged by Plaintiffs are primarily predicated on their own dissatisfaction with the manner in which Defendants have interpreted and implemented the license tax ordinance. We also believe the alleged actions that Plaintiffs seek to compel involve discretionary determinations that entail the application of specific factual circumstances and/or a combination of facts and law.[8] *See id.* As mandamus cannot be used to control the discretionary actions of public officials, we find that the relief sought by Plaintiffs lies outside the scope of mandamus. *See, e.g., McBeth*, 322 S.W.3d at 532; *Jones*, 965 S.W.2d at 213.

### Civil Negligence Action

In their "Class Action Petition" seeking compensatory and punitive damages, Plaintiffs asserted standing based on their status as taxpayers, claiming that Defendants negligently failed to properly enforce the provisions of Chapter 620 by failing to fully collect the one percent (1%) license tax from all entities engaged in a restaurant business. Plaintiffs also alleged that the failure to collect all license taxes due from 2009 "has resulted in a loss of revenue which is a

---

[8] The enforcement of the Chapter 620 license tax ordinance necessarily involves the exercise of reason in the adaptation of means to an end and discretion in determining the applicability of the ordinance, *i.e.*, determining whether an entity is "engaged in the business of a restaurant," whether an entity is "an establishment offering prepared meals . . . which are intended for immediate consumption," whether the entity is "selling prepared foods and meals" on "the premises," and determining what constitutes "retail groceries."

13

detriment and injury to the taxpayers of the City of St. Charles." In addition, Plaintiffs alleged that they have a "special interest in the subject matter of this lawsuit, distinct from that of the general public" and that they have been "specially damaged" by the "loss of tax revenue" and "increase of the burden of taxation upon them." They further alleged that Defendants' "negligent" and "illegal conduct" is sufficient to show a "private pecuniary injury" to them and members of their proposed class.

The private injury that invests standing to a taxpayer is not a purely personal grievance where other taxpayers have no interests, but rather an injury shared by the public at large. *State ex rel. Mid-Missouri Limestone v. City of Callaway*, 962 S.W.2d 438, 441 (Mo. App. W.D. 1998). "The rule allowing taxpayers standing to sue does not have as its purpose a private redress but rather a public benefit." *Id*.

For the same reasons set forth under our discussion regarding the mandamus action, Plaintiffs have similarly failed to demonstrate they have standing to bring a civil negligence action against Defendants. While it is apparent that Plaintiffs are dissatisfied with the manner in which Defendants have interpreted and implemented the license tax ordinance, they cite no authority (nor have we found any) holding that a private citizen whose own tax liabilities are not contested has standing to sue a municipality to compel the collection of allegedly unpaid taxes from nonparty taxpayers.[9] Plaintiffs also cite no authority where a governmental entity was found liable for damages in connection with the alleged failure to collect taxes from other nonparty taxpayers. Thus, in the absence of authority to the contrary, we decline to expand the

---

[9] Other jurisdictions that have addressed the issue of taxpayer standing within the context of tax collection actions have reached similar conclusions. *See, e.g., Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund*, 686 So.2d 252, 253 (Ala. 1996) (taxpayer lacked standing to bring mandamus action or class action to compel collection of a 1% tax allegedly owed by other taxpayers); *Schlenz v. Castle*, 503 N.E.2d 241 (Ill. 1986) (private citizen has no authority to bring suit for alleged failure to collect taxes); *People ex rel. Morse v. Chambliss*, 77 N.E.2d 191 (Ill. 1948) (individual taxpayer could not maintain action to compel collection of taxes).

traditional and well-established doctrine of standing beyond that already recognized by Missouri courts.  Accordingly, we find that the trial court did not err in granting Defendants' motions to dismiss both actions for lack of standing.  Point I is denied.  Without standing, Plaintiffs' Points II, III, and IV are denied as moot.

### Conclusion

For the foregoing reasons, the judgments of dismissal are affirmed.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.