STATE OF MISSOURI, at the Relation and to the Use of ALVIN D. HATTEN, Collector of Revenue of Jackson County, Missouri, Appellant, v. KANSAS CITY POWER & LIGHT COMPANY, a Corporation, Respondent, No. 44231—281 S. W. (2d) 784.

Division Two, September 12, 1955.

*Donald B. Clark* for Alvin D. Hatten and *Jack C. Terry* for Fire District No. 1 appellant.

*Irvin Fane, Arthur J. Doyle* and *Spencer, Fane, Britt & Browne* for respondent.

298

[785] LEEDY, P. J.—This action is prosecuted by the Collector of Jackson County to recover taxes for the years 1948-1951, both inclusive, as levied by the county court upon defendant's distributable property for the benefit of Fire District No. 1 in that county. Judgment for defendant, and plaintiff appealed. Jurisdiction of the appeal is in this court [786] because the case involves the construction of the revenue laws of this state, Art. V, § 3, Const. of Mo.

The question presented is that of the correctness of the trial court's findings that the separate assessment of defendant's distributable property for the benefit of the fire district, and the levy made by the county court based thereon "were invalid and without authority of law." Although there were four counts in the petition, they differ only as to dates and amounts, and so for brevity we have employed above, and will throughout the opinion continue to use, the singular number in referring to questioned steps, and otherwise, as though taxes for only one year were involved.

■ The subject of the validity of, and liability on the part of a public utility (such as defendant) for distributable property taxes assessed and levied for the benefit of certain governmental units has been considered by this court in several cases under divergent facts and legal contentions. State ex rel. Halferty v. Kansas City Power & Light Co., 346 Mo. 1069, 145 S.W. 2d 116; State ex rel. Jackson Co. Library Dist. v. Evans, 360 Mo. 1052, 232 S.W. 2d 386. See, also, State ex rel. Benson v. Union Electric Co., 359 Mo. 35, 220 S.W. 2d 1.

In brief outline, the statutory scheme for subjecting the property of such utilities to taxation is this: § 153.030 (this and all other statutory references are to RSMo 1949 and VAMS unless otherwise expressly noted) provides, inter alia, that "all property, real and tangible personal, owned by * * * electric power and light companies * * * shall be subject to taxation for state, county, municipal and other local purposes to the same extent as the property of private persons. 2. And taxes levied thereon shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property in this state, and county courts, county boards of equalization and the state tax commission are hereby required to perform the same duties and are given the same powers in assessing, equalizing and adjusting the taxes on the property set forth in this section as the said courts and boards of equalization and state tax commission have or may hereafter be empowered with, in assessing, equalizing, and adjusting the taxes on railroad property; and the president or other authorized officer of any such * * * electric power and light companies * * * is hereby required to render statements of the property of such * * * electric power and light companies * * * in like manner as the president, or other authorized officer of the railroad company is now or may hereafter be required to render for the taxation of railroad property."

The law governing the taxation of railroad property which is thus made applicable to power and light companies is to be found in Chap. 151, § § 151.010-151.340. These statutes have been construed as dividing the property of such companies into two classes, distributable and local. Distributable property (with which alone we are presently concerned) is to be assessed and valued as a whole, and the aggregate value allocated to certain taxing subdivisions on a wire or track mileage basis, and the local property to be assessed by the local assessor of the taxing subdivision in which such property is located. State ex rel. Hayes v. Hannibal & St. J. Ry. Co., 135 Mo. 618, 37 S.W. 532; State ex rel. Spratt v. Chicago, R. I. & P. Ry. Co., 162 Mo. 391, 63 S.W. 495: State ex rel. Union Electric Light & Power Co. v. Baker, 316 Mo. 853, 293 S.W. 399. § 151.020 provides in substance that the president or other authorized officer of a railroad company shall furnish to the state tax commission annually a sworn statement setting out in detail certain information with respect to the distrib-

utable property owned by it "in each county, municipal township, incorporated city, town or village through or in which it is located in this state." Under § 151.060 the state tax commission is required to assess, adjust and equalize the aggregate value of the property specified in § 151.020. Under § 151.080 the aggregate value of all such property is apportioned or allocated by the tax commission to certain local taxing subdivisions according to the ratio that the pole mileage [787] in such subdivision (in the case of power and light companies, or trackage in the case of railroads) bears to the whole length of the pole mileage (or trackage) in this state.

The tax commission is required to keep a record of its proceedings, and to certify its action to the county court setting forth certain information with respect to distributable property owned by each railroad (or power and light company) in the state, and the value thereof per mile and its total length "in each county, city, town, village and municipal township;" also the total values "assessed, adjusted, equalized, and apportioned to such county, city, town, village and municipal township therein by said commission." (§ 151.090.)

§ 151.140, in relation to levying the tax, provides that the "county court, upon the receipt from the state tax commission * * * shall * * * ascertain and levy the taxes for state, county, municipal township, city, incorporated town and village and school purposes * * * and for other purposes on the railroad and the property thereof, in such county, municipal township, city and incorporated town or village, at the same rate," etc.

██ ██ In the Halferty case, supra, it was held that under the then existing statutes there was no lawful authority for the assessment and levy of distributable property taxes for the benefit of a water supply district. At the time of that decision neither water districts nor fire districts were mentioned in any of the statutes (then and now under scrutiny) in relation to the successive steps of listing (§ 151.020), apportioning (§ 151.080), certifying (§ 151.090), and levying (§ 151.140) distributable property taxes for the benefit of taxing subdivisions. Counties, cities, towns, villages and municipal townships were the ones mentioned. Subsequent to the Halferty decision, § 151.080 was amended (insofar as here material) so as to include certain other subdivisions, to wit, special road districts, public water supply, fire protection and sewer districts. Laws 1941, p. 695; Laws 1945, p. 1952.

The situation presented as a result of such amendments (hereinafter referred to as "amendment") is that § 151.020 (with respect to the statement to be made by the utility to the tax commission and whereon the latter acts) does not in terms provide for the separate listing of, nor any other means for ascertaining, distributable property lying within a fire district so as to form the basis for apportionment, whereas the amended section (§ 151.080) specifically mentions

fire districts as being one of the subdivisions to which the tax commission shall make a separate apportionment of values. The latter section is also at odds with § 151.090 (requiring the commission to certify to the county court the pole miles "in each county, city, town, village and municipal township; also the total value * * * as assessed, adjusted, equalized, and apportioned to such county, city, town, village and municipal township therein"), and for like reason it is also in conflict with § 151.140 which, in authorizing the county court to levy the taxes, refers to the subdivisions last above mentioned, but not to fire districts.

As to the assessment aspect, plaintiff readily concedes that if the tax commission does not have before it or cannot obtain the pole miles or trackage in a fire district, then there would be no ratio to apply, and consequently there could be no apportionment to it. But plaintiff urges that whether the tax commission has the authority to compel the furnishing of such figures is immaterial in this case because the defendant had, in fact, submitted that information in its annual statement, and it not being contended such information is incorrect, no issue exists in that regard. True, defendant did submit such information, but only under protest, all the while challenging the commission's authority to make such a requirement. Inasmuch as the adoption of plaintiff's theory would settle nothing except this lawsuit, and the question being one requiring a definitive answer, not merely as to this defendant's liability for the years here involved, but also as to all others affected, including the taxing authorities, [788] we think the case should not pass off on such a tangent.

The rule is that "taxing statutes are construed strictly in favor of the taxpayer, bearing in mind that they should be applied with due regard to the apparent intention of the Legislature as expressed in the statute, with a view to promoting the apparent object of the legislative enactment." State ex rel. Halferty v. Kansas City Power & Light Co., supra, l.c. 122. Plaintiff argues that by the amendment of § 151.080, bringing in additional subdivisions, the legislature intended to correct a situation brought to its attention by the decision in the Halferty case; that there could be no possible purpose in making special provision for apportionment of distributable property values to fire districts, as was done by the amendment, unless it was intended that the property so apportioned would be subject to the taxing power of the county in order to raise revenues for the districts so enumerated. And so plaintiff makes the contention that inasmuch as § 151.080 enjoins upon the tax commission the duty of making separate apportionments of values to fire districts, that "the authority to obtain necessary information and to do all other acts necessary to the performance of such function must necessarily follow and be implied." Even if this be conceded, we still fail to appreciate how this would solve the problem, because the authority of

the *tax commission* in that regard cannot be thought to create a duty on the part of the county court to levy taxes based on such separate apportionments when the very section empowering the court to levy does not comprehend or embrace such a district. We think the applicability of the principle of implied powers in implementing the apportionment statute must be denied for the reason that all accompanying steps in the taxing process are particularized in the other sections to which we have referred, and none of such other sections were repealed or amended. The legislative history of the amendment in question when considered in connection with certain others proposed, but not adopted, fortify this view. The amendment of 1941 (Senate Bill 199) added special road districts, water supply and sewer districts to the apportionment section (fire districts were added in 1945). Senate Bill 199 was one of a series of bills under consideration by the 61st General Assembly which would have revamped the railroad tax act by making specific provision for the inclusion of such newly added districts ("and any other municipal corporation or political subdivision of the state which is now or may hereafter be organized with power to levy a general tax upon all property") in all sections thereof wherein local subdivisions were enumerated. This would have made a consistent pattern and workable plan, but Senate Bill 199 alone was passed. The failure or refusal to adopt such other amendments renders the meaning of that which was adopted sufficiently ambiguous and uncertain as to justify resort to legislative history in an effort to ascertain intent. Obviously there was no legislative intent that the other key sections to which we have adverted be amended. We have therefore come to what seems to be the inescapable conclusion that the failure to conform such other sections to § 151.080 as amended resulted in a *casus omissus* in the statutory scheme as regards obtaining the requisite information whereon to base a separate apportionment as well as the further act of certifying the same and that of levying for the benefit of *those particular districts affected by, and brought into the act through, the amendment.*

Plaintiff nevertheless insists that the validity of the tax should be sustained under the doctrine of State ex rel. Benson v. Union Electric Co., supra, this upon the theory, as we understand the contention, that because defendant's distributable property is subject to the taxing power of the county, that by force of the statute under which the fire district was created and exists the county court is authorized to levy taxes for the benefit of such a district. The Benson case did in one sense so hold with regard to distributable property for the benefit of a library district, but on final analysis it will be found the levy was sustained [789] as having been made under the railroad tax act governing the levying of taxes for school purposes. The Benson case did not purport to overrule the Halferty

case; it distinguished it. Under plaintiff's present contention, the result in the Halferty case would have been different, and it is to be noted that the holding in the Halferty case was upon a consideration of sections of the statute involving the taxing powers of a water district which are substantially and to all practical purposes like those of fire districts, as here involved. The peculiar facts in the Benson case, as well as differences in the statute there under consideration, make that case distinguishable from the one at bar. Unlike the case at bar, the Benson case did not involve a levy based upon a separate apportionment by the tax commission for the benefit of the library district, and the statute there in question (the act under which the library district was created and the tax voted) directed that the tax be levied and collected in the manner that taxes relating to school districts are levied. Such manner, *as prescribed by the railroad tax act,* did not involve, nor was it based upon, separate apportionments to school districts, but rather, after the aggregate valuation has been certified, the court ascertains the average rate of taxation in all the districts of the county, and through its clerk apportions "the said taxes for school purposes" proportionately to the enumeration returns of the several districts.

The fire district act, § 321.270, in relation to the levy and collection of fire district taxes, provides: "It shall be the duty of the body having authority to levy taxes within the county to levy the taxes provided in this chapter, and it shall be the duty of all officials charged with the duty of collecting taxes to collect such taxes at the time and in the form and manner and with like interest and penalties as other taxes are collected; * * *." The foregoing statute does not, in terms, direct how or in what manner such taxes are to be *levied.* True, it does say that they are to be *collected* "at the time *and in the form and manner* and with like interest and penalties as other taxes are collected." If this comprehends the levying of distributable property taxes (and if so it also embraces all other steps necessary to effectuate the imposition and collection of the tax), there would still be no definite guide because, as the Benson and Halferty cases demonstrate, such form and manner varies, depending upon the purpose for and subdivision to which made.

We think it manifest that the authority of the county courts to levy distributable property taxes *based upon separate apportionments of values* allocated by the tax commission under § 151.080 is confined to those subdivisions enumerated in § 151.140, thus excluding levies for fire districts under the present state of the statutes.

The judgment is, accordingly, affirmed. All concur.