SOUTHWESTERN BELL TELEPHONE COMPANY, a corporation, Missouri Utilities Company, a corporation, and Union Electric Company, a corporation, Plaintiffs-Respondents,

v.

Roger D. BOND, Collector of Revenue, Miller County, Missouri, Defendant,

and

Miller County Reorganized School District No. 2, Intervenor-Appellant.

No. KCD 30278.

Missouri Court of Appeals, Western District.

Feb. 4, 1980.

Motion for Rehearing and/or Transfer Denied March 3, 1980.

Application to Transfer Denied April 8, 1980.

Kelly Pool, Jefferson City, James E. Taylor, Kansas City, for Southwestern Bell, plaintiffs-respondents.

Ken Oswald, Eldon, for Bond.

John L. Oliver, Jr., Pros. Atty., Cape Girardeau, for respondents.

John W. Inglish, Jefferson City, Wm. H. Ferrell, St. Louis, for intervenor-appellant.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SHANGLER, Presiding Judge.

The plaintiffs public utilities, owners of taxable property in Miller County, sue to recover taxes levied in year 1975 and paid under protest to defendant Collector of Miller County. The taxes were collected for the benefit of the school districts, governmental units within the county with authority of law to levy taxes. The Miller County Reorganized School District No. 2, one of the distributees of the 1975 tax collection affected by the claim for refund, was allowed intervention in the litigation as a party.[1] The cause was submitted on a stipulation of facts and other evidence. The trial court adjudged that the levy imposed by the intervenor [and two other school districts] was excessive and ordered the defendant Collector to make refund with interest to the utilities.[2] The intervenor School District appeals.

The taxation of railroads and utilities is governed by §§ 151.010 to 151.340 and § 153.030, RSMo 1978. These statutes classify such property as *local* and *distributable* for purposes of taxation. *State ex rel. Hatten v. Kansas City Power & Light Company*, 281 S.W.2d 784, 786[2, 3] (Mo. 1955). The local property of railroads and utilities—real and tangible personal property—is liable for assessment and tax levy to the same extent as other privately owned property within the county. §§ 151.100,

---

1. The petition claim for refunds alleges excessive levies by three school districts; the intervenor and the Russellville CR–1 and Westphalia R–3 districts. Only the Miller County Reorganized District No. 2, however, sought participation in the litigation.

2. The parties agree that should the lawful tax rate be adjudged as contended, the plaintiffs are entitled to the amounts, with interest, stated in the pleading.

153.030 and 137.075, RSMo 1978. Thus, the local property of a railroad or a utility within a school district [or other unit within a county with authority to tax] is subject to rate of levy certified to the county clerk under § 164.011. The distributable property of railroads and utilities—rolling stock and other inter-county operational equipment—on the other hand, is taxed according to the average school levy for a county, derived from the mean of the total levies of the several school districts sited wholly or partially within the county. § 151.150. In essence, the *local property* is assessed by the county and is taxed on the individual levy of a school district, while the *distributable property* is assessed by the state and is taxed by an individual school district at the average of rates of all the school districts within the county.

The taxes plaintiffs seek to recover are from the 1975 levies on owned local and distributable property for the benefit of the eight school districts within Miller County. That year the intervenor School District fixed a levy of 325¢ per $100 assessed valuation to produce the $540,000 estimate of need to operate the district. The estimate of tax yield was based on the extant 1974 valuation of $16,647,665 for local property. That year, the average rate of school levy of all the school districts throughout Miller County was 369¢ per $100 assessed valuation expected to produce $1,869,776 in local taxes.

In year 1975, after the rates of levy were certified by the school districts to the county court and imposed, the State Tax Commission ordered the assessed valuation of the real and personal [local] property within Miller County increased to $19,661,-760. Thus, the litigants agree, the total assessed valuation for the local property in Miller County increased by more than ten percent from year 1974 to year 1975. This event brought into operation the provisions of § 137.073, RSMo 1978:

> Whenever the assessed valuation of real or personal property within the county has been increased by ten per cent or more over the prior year's valuation, either by an order of the state tax commission or by other action, *and such increase is made after the rate of levy has been determined and levied by the* county court, city council, *school board*, township board or other bodies legally authorized to make levies, *and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation.[3] The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year.* The term "rate of levy" as used herein shall include not only those rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds. Laws 1955, p. 835 § 1. [Emphasis added.]

The statute was enacted to prevent a windfall to a governmental unit with authority to tax by a fortuitous official action to increase the valuation of the real or personal property in a county. *Missouri Pacific Railroad Company v. Kuehle*, 482 S.W.2d 505, 509[3–6] (Mo. 1972). In such event, the levy must be reduced to yield substantially the original estimate. *Southwestern Bell*

---

3. The litigants agree that the reductions contended for by the plaintiffs do not cause a reduction in the apportionment of state school funds due to the increased valuation—or otherwise deny to any school district in suit participation in state funds.

*Telephone Co. v. Hogg,* 569 S.W.2d 195, 199 (Mo. banc 1978).

All the school districts sited in Miller County undertook to amend their rates of levy to conform with the increase of more than ten percent in the real and personal property assessment of the prior year. The intervenor School District certified 288¢ per $100 assessed valuation as the new tax rate on the local property within the district. The new average tax rate of all the school districts within the county was reduced to 337¢ per $100 assessed valuation. The plaintiffs contend, nevertheless, that the action does not conform with the direction of § 137.073 that the School District "revise and lower the rates of levy to the extent necessary to produce from all taxable property *substantially the same amount of taxes as previously estimated to be produced by the original levy."* [emphasis added.] In fact, the revised levy of 288¢ imposed by the intervenor School District upon the reassessed local property yields an estimated $566,284,[4] or $26,284 more than the $540,000 expected from the original levy. The revised average rate from the reduction of the levies of the school districts throughout Miller County produces $1,926,-132 in local taxes, a sum $56,356 in excess of the estimated needs of the total districts. The plaintiffs contend that the revised rate of levy for the School District remains excessive by 13¢ and that a proper compliance with § 137.073 requires reduction of that levy to 275¢ per $100 assessed valuation—which, even then, yields $698.40 more than the $540,000 estimated from the original levy. The plaintiffs contend also that a proper compliance by all the school districts of Miller County to the intendment of § 137.073 results in an average levy of 332¢ which, when imposed, still produces $10,488 in excess of the estimates of need of the total school districts.

The intervenor does not doubt that the increased assessed valuation of the local property requires a reduced levy, or that the revised rate of levy adopted—288¢—yields $26,000 more than from the original

levy. The intervenor asserts, nevertheless, the direction of § 137.073 that upon reassessment the school district shall reduce the rate of levy "to the extent necessary to produce *from all taxable property* substantially the same amount of taxes as previously estimated to be produced by the original levy" [emphasis added] means that a school district takes into account all sources of revenue—not only from the levy on local property but also from the levy on the state assessed railroad and utility distributable property. In these terms, the intervenor does not reckon the $26,000 above the original levy a windfall, but only a fair offset against any loss of revenue to result from lower receipts from the distributable property by reason of reassessment.

■ This argument states a conundrum. For the purposes of school taxes, the levy on the distributable property of railroads and utilities represents the mathematical mean of the levies of all the individual school districts wholly or partially within a county. § 153.150. If a true rate of levy on local property of one school district must wait in every case the average of the levies of all the school districts, the process of reduction of the rate of levy by a school district under § 137.073 could never commence.

■ The possibility that reassessment may yield a lower receipt to a school district from the state-assessed tax on railroads and utilities does not bear on the validity of the reduced rate of levy adopted on local property by a school district. The reassessment § 137.073 calls for the rate of levy of a school district to be reduced to a level which yields "substantially the same amount of taxes as previously estimated to be produced by the original levy." The original levy [325¢ per $100 assessed valuation in this case] did not produce any taxes other than local taxes and the reduction, therefore, concerns nothing other than local taxes. *All taxable property* subject to the original levy was not, as the intervenor suggests, the local and distributable property, but *all*

---

4. The plaintiffs compute the revised School District levy to yield $566,258.68 in local taxes, or $26,258.68 more than estimated from the original levy, while the intervenor computes the result to be $566,284.

the *local property*—both personal and real—within the district.

The assertion the intervenor makes was considered and determined adversely to contention in *Missouri Pacific Railroad Co. v. Jones*, 544 S.W.2d 541, 1. c. 547[1] (Mo. 1976):

> Defendants-intervenors also claim the trial court failed to take into consideration reduced tax receipts which would be lost by the school districts from state assessed utility distributable property. *The real issue however is whether substantially the same amount of taxes previously estimated to be produced by the original levy will be produced from the revised and lowered school tax rate of levy.*
>
> In determining and certifying its original levy necessary to produce the tax revenues required to operate school districts, each district fixed a levy which would, when applied to its locally assessed property alone, produce the revenue needed. Utility property, which is assessed on a state-wide basis, is taxed according to Section 151.150. The utility property raises additional revenue over and above that amount certified to the county collector. When the rates of levy of each district was revised by the trial court it is true that less revenue was produced from utility taxes. However no credit is due on that decrease. This is so because *Section 137.073 is not directed to the state assessed utility property. Section 137.073 requires only that substantially the same amount of taxes as were previously estimated to be produced by the original levy be produced by the revised levy. This original amount is not based on utility property and no decrease in taxes raised from utility property due to a revision of levies downward results in a tax credit. Utility property simply is not a factor in determining substantial compliance with Section 137.073.* [Emphasis added.]

Accordingly, the proof attempted by the intervenor to show a diminished revenue from the distributable property tax by *post hoc* evidence of the effect of reassessment, rather than by the estimates of need required by law—even if otherwise competent [*Missouri Pacific Railroad Company v. Campbell*, 502 S.W.2d 354, 358[6] (Mo.1973)], does not bear relevantly on whether a reduced levy yields substantially the same revenue as the original levy.

The intervenor cavils that *Jones* rests on false postulates and so draws an erroneous conclusion as to the intendments of § 137.-073.[5] We are bound nevertheless by that decision of the Supreme Court and, we hasten to add, concur with the rationale.

The judgment of the court for tax refunds and interest for the plaintiffs is affirmed according to the amounts stipulated.

All concur.

---

5. The intervenor lodged appeal with the Clerk of the Supreme Court on the premise that the litigation involved the construction of a revenue law of Missouri. Mo.Const. Art. V, § 3 (as amended 1970). The appeal was transferred to this court by order of the Supreme Court on the premise, we assume, that application only of the statute was involved.