**STE. GENEVIEVE SCHOOL DISTRICT R–II, et al.,**
Appellants,

v.

**BOARD of ALDERMEN OF THE CITY of STE. GENEVIEVE,**
et al., Respondents.

No. SC 83777.

Supreme Court of Missouri,
En Banc.

Jan. 22, 2002.

Rehearing Denied Feb. 26, 2002.

Steven L. Wright, Columbia, for appellants.

James E. Mello, Jeffery T. McPherson, Armstrong, Teasdale, LLP, Shulamith Simon, St. Louis, for Respondents.

Kelli Hopkins, Amicus Curiae, Missouri School Board Association, Columbia.

JOHN C. HOLSTEIN, Judge.

The Ste. Genevieve school district and Mikel A. Stewart, an individual, appeal a trial court order dismissing their joint petition for declaratory judgment based on

lack of standing and failure to state a claim upon which relief can be granted. After the court of appeals issued an opinion, the case was transferred to this Court. *Mo. Cont. art. V, sec. 10.* The judgment of the trial court is reversed, and the case is remanded.

## I. FACTS

In 1992, the City of Ste. Genevieve created a Tax Increment Financing (TIF) Commission pursuant to Missouri's Real Property Tax Increment Allocation Redevelopment Act. *See* sec. 99.800 *et seq.*[1] The commission recommend that the city establish a redevelopment area and approve a redevelopment project plan within it entitled the "Redevelopment Plan for Valle Springs Tax Increment Financing District." The city subsequently adopted ordinances embodying both recommendations and established the proposed redevelopment area and redevelopment plan.

The commission acted again in 1997, recommending that the boundaries of the pre-existing redevelopment area be enlarged to included three new redevelopment project areas (RPA 2, RPA 3, and RPA 4) and that the redevelopment plan be amended to provide for additional projects within these three new areas. Specifically, the plan called for the use of TIF revenues to pay for improvements in the water, storm water and sanitary sewer systems in RPA 3. All these changes were also adopted by city ordinance.

The city then solicited proposals for the redevelopment of part of RPA 3. Golden Management, Inc., submitted a proposal for the redevelopment of the Pointe Basse Plaza, a shopping center located in RPA 3.

Golden's proposal called for TIF revenues to be used for property acquisition, site preparation, the relocation of utilities, road and traffic signal improvements, the relocation of some tenants of Pointe Basse Plaza, and parking lot improvements to the shopping center. These improvements were in addition to the improvements already proposed for RPA 3. The proposal increased the overall costs associated with RPA 3 by over 360 percent adding well over $1,000,000 to the project's costs.

The city decided not to reconvene the TIF commission, which would have required the appointment of commission members by both the city and the Ste. Genevieve school district. Instead, the city adopted an ordinance that amended the overall redevelopment plan to embody the changes in RPA 3 proposed by Golden and that directed the city mayor to execute a redevelopment agreement with Golden. The ordinance also authorized the issuance of TIF notes to fund the cost associated with the redevelopment of Pointe Basse Plaza.

The Ste. Genevieve school district and Mikel A. Stewart then filed a petition for declaratory judgment, arguing that the city was without authority to amend the redevelopment project without reconvening the TIF commission.[2] If the TIF commission had been reconvened, the Ste. Genevieve school district would have been able to appoint a certain number of members to the commission. Part of the property taxes abated by the redevelopment project would otherwise have gone to the school district. Stewart, according to the petition, is the superintendent of the Ste. Genevieve School District and is also a

---

1.  Unless otherwise noted, all citations to statutes are to RSMo 2000.

2.  The petition also challenged the constitutionality of the proposed expenditures under the amended redevelopment plan. Because the petition was dismissed for lack of standing and failure to state a claim, the Court does not reach the constitutional issue.

taxpayer of both the school district and the city. Originally, only the city was named as a defendant in the declaratory judgment action. However, Stewart and the school district later added Golden as a defendant.

The city and Golden filed motions to dismiss the action, claiming that both plaintiffs lacked standing to sue and that the petition failed to state a claim upon which relief could be granted. The trial court ruled that neither plaintiff had standing and, even if either one had standing, the petition failed to state a claim.

## II. STANDING

■ Both Stewart and the school district have standing to bring the declaratory judgment action at issue in this case. Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote. *See Raines v. Byrd,* 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). In the context of an action for declaratory judgment, Missouri courts require that the plaintiff have a legally protectable interest at stake in the outcome of the litigation. *Battlefield Fire Protection District v. City of Springfield,* 941 S.W.2d 491, 492 (Mo. banc 1997). A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute. *Id.*

■ The school district has a legally protected interest, conferred by statute, in appointing members to the TIF commission. Its power to appoint members to the commission is given in the very same statute that grants municipalities the power to use tax increment financing to fund redevelopment projects like this one. *Sec. 99.820.*

■ The district also has standing because the city's actions, if improper, would unlawfully deprive the district of tax revenue. Under Missouri law, a school district that is threatened with the imminent unlawful deprivation of part of its funds has standing to seek a declaratory judgment challenging the statutory interpretation that would lead to the deprivation. *State ex rel. Sch. Dist. Independence v. Jones,* 653 S.W.2d 178, 189 (Mo. banc 1983).

The very nature of TIF financing is that it funds the redevelopment of a particular parcel of property by abating increases in the property taxes on that parcel for a period of time determined by the costs of the redevelopment project. *See generally* sec. 99.845. This abatement applies both to taxes imposed by the municipality that authorizes the redevelopment project and to taxes imposed by any other taxing district, like a school district, in which the property is located. *Sec. 99.845.* If the city's amendment of the redevelopment plan without reconvening the TIF commission was unauthorized, the school district will be unlawfully deprived of tax funds to which it would otherwise be entitled.

■ The taxpayer, Stewart, also has standing to bring the declaratory judgment action, although his right to do so is less clear than the right of the school district. He has standing under his status as a taxpayer of the city and of the school district. A taxpayer has standing to challenge an alleged illegal expenditure of public funds, absent fraud or compelling circumstances, if the taxpayer can show either a direct expenditure of funds generated through taxation, an increased levy in taxes, or a pecuniary loss attributable to the challenged action of the municipality. *Eastern Missouri Laborers District Council v. St. Louis County,* 781 S.W.2d 43, 47 (Mo. banc 1989).

Missouri courts allow taxpayer standing so that ordinary citizens have the ability to make their government officials conform to the dictates of the law when spending public money. *State ex rel. Nixon v. American Tobacco Co.*, 34 S.W.3d 122, 133 (Mo. banc 2000). In this case, both the city and the school district will suffer a pecuniary loss from the transaction. Because the TIF financing in this case abates increases in property tax, both the city and the school district will be unable to collect property taxes revenues that they otherwise would have collected. Because the redevelopment project costs the district and the city future tax revenue, the taxpayer has standing to seek a declaratory judgment.

The city and Golden are incorrect in arguing that Stewart does not have standing because the overall amount of tax abatement for the four RPAs was not increased by the amendment to the redevelopment plan. The amendment to the redevelopment plan increased the costs of work in RPA 3 by 360%. Even though this amount was offset by reductions in the amounts tentatively planned for work in other RPAs, the ordnance adopting the amendment still authorized a transaction that would cause a pecuniary loss to the city and the school district. The core issue for taxpayer standing is that the claimed illegal action results in the pecuniary loss, not the size of the pecuniary loss relative to other possible lawful expenditures.

## III. FAILURE TO STATE A CLAIM

When reviewing the dismissal of a petition for failure to state a claim, appellate courts treat the facts contained in the petition as true and construe them liberally in favor of the plaintiffs. *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). If the petition asserts any set of facts that would, if proven, entitle the

plaintiffs to relief, the petition states a claim. *Id.* The petition here meets that standard.

In this case, the pleading asserts that the Real Property Tax Increment Allocation Redevelopment Act requires the city to reconvene the TIF commission before the city can make an amendment to the redevelopment plan that substantially alters the cost and scope of an individual redevelopment project and that the amendment occurred here without reconvening the commission.

Section 99.825 states that after the adoption of an ordinance approving a redevelopment area or projects, no amendments can be made by the city that (1) alter the exterior boundaries of the redevelopment area, (2) affect the general land uses established in the redevelopment plan, or (3) change the nature of the redevelopment project without complying with the full procedures that are required when a redevelopment area or project is originally proposed. These procedures include the use of the TIF commission, with a certain number of members appointed by the school district and other taxing districts in which the property is located, and the holding of public hearings and the issuance of recommendations by the commission. *Sec. 99.820.2.*

The amendment to the redevelopment plan, if proven, changes the nature of the redevelopment project. When interpreting a statute, courts must give effect to the intent of the legislature as it is expressed in the words of the statute. *Murray v. Missouri Highway & Transp. Com'n*, 37 S.W.3d 228, 233 (Mo. banc 2001). Absent a definition provided in the statute, the court must follow the plain and ordinary meaning of the words themselves. *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). There is no room for construction where a

statute is clear and unambiguous. *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988).

Looking at the language of sec. 99.825, the amendment in this case is a change in the nature of the redevelopment project. The term "nature" is somewhat ambiguous. It not only refers to "the essential characteristics of and qualities of a person or thing," as argued by the city and Golden, but also refers to "the distinguishing qualities or properties of something." *Webster's Third New International Dictionary* 1507 (1981).

Under either definition, the amendment changes the nature of the project. It increases the cost of the project by over $1,000,000, a 360% change. It also changes the entire focus of the project. Before the amendment, RPA 3 consisted of water, storm water, and sanitary sewer system improvements. After the amendment, the project consists of a massive redevelopment of a shopping center, extensive parking lot work, and even moving several of the shopping center's current tenants. It is difficult to imagine what would constitute a change in the nature of a redevelopment project if the alterations made by the amendment in this case do not.

The city and Golden argue that these substantial alterations to the redevelopment plan for RPA 3 are not the type of change referred to in sec. 99.825. They argue that because all of the redevelopment activities contained in the amendment could be used to meet the goals of the overall redevelopment plan and because the overall cost of the entire redevelopment plan was not changed, there was not a change in the project's nature. What the city and Golden's argument ignores is the fact that sec. 99.825 refers to each particular redevelopment *project,* not to the overall redevelopment plan. Ac-cepting the allegations of the petition as true, the amendment in this case constitutes a change in the nature of the project.

## IV. CONCLUSION

The Ste. Genevieve school district and Mikel A. Stewart have standing to bring a declaratory judgment action against the City of Ste. Genevieve and Golden Management, Inc. Section 99.825 requires the city to submit any amendment that significantly alters an already approved redevelopment project to the TIF commission for public hearings and a recommendation. Because the plaintiffs state a claim for which relief can be granted, the trial court's judgment is reversed, and the case remanded for further proceeding consistent with this opinion.

All concur.