**STATE ex rel. KANSAS CITY POWER & LIGHT CO., Relator,**

v.

**The Honorable Gerald D. McBETH, Respondent.**

**State ex rel. Lisa Pope, in her official capacity as Platte County Assessor, Relator,**

v.

**The Honorable Gerald D. McBeth, Respondent.**

**Nos. SC 90693, SC 90694.**

Supreme Court of Missouri, En Banc.

Sept. 21, 2010.

result, not with the route taken to reach that result.'').

Todd P. Graves and Edward D. Greim, Graves Bartle Marcus & Garrett PC, Kansas City, James W. Farley, Law Office of James W. Farley, Platte City, William G. Riggins and Heather Humphrey, Kansas City Power & Light Co., Kansas City, for KCPL.

John R. Shank and Ryan J. Springer, Gunn, Shank & Stover PC, Kansas City, for assessor.

Edward D. Robertson Jr., Mary D. Winter and Anthony L. DeWitt, Bartimus, Frickleton, Robertson & Gorny PC, Jefferson City, and Gary L. Myers, Law Offices of Gary L. Myers, St. Joseph, for the school district and taxpayers.

WILLIAM RAY PRICE, JR., Chief Justice.

## I. Introduction

West Platte R–2 School District and two individual taxpayers in Platte County (collectively "plaintiffs") filed suit against the Platte County assessor, Lisa Pope, over her property tax assessment of two power plants owned by Kansas City Power & Light Co. ("KCPL"). KCPL intervened,

and the assessor and KCPL filed motions to dismiss, arguing that the plaintiffs lacked standing to challenge the valuation of another's property. The Honorable Gerald D. McBeth ("respondent") overruled both motions. The assessor and KCPL applied to this Court to prohibit the respondent from proceeding, and preliminary writs in prohibition issued.

The preliminary writs of prohibition are made permanent.

## II. Facts and Procedural History

In 2006, KCPL began an environmental retrofit of a coal-fired electricity generating plant known as Iatan I. The same year, KCPL began construction of a second facility known as Iatan II. Iatan I was temporarily offline due to the retrofit from fall 2008 until spring 2009. Iatan II is projected to be in service in fall 2010. Both plants are located in Platte County. In the underlying lawsuit, the school district and two taxpayers brought suit seeking a declaratory judgment as to the laws applicable to the *ad valorem* tax assessment of the two plants and a writ of mandamus compelling the Platte County assessor to comply with the applicable law.

Missouri law requires KCPL, as a public utility, to file a report with the county assessor describing its local property situated in the county and the "true value in

money thereof."[1] The required form contains three columns to be completed: one for the taxpayer to provide the "company's original cost"; a second for the assessor to provide an estimate of the "market value" of the property; and a third for the assessor to provide an "assessment" value on which the tax is levied.[2] Pursuant to the statute, KCPL completed the required form by filling in the original cost column, which consisted mainly of KCPL's construction costs for the two plants.[3] It attested that "the foregoing is a true, full and complete description and valuation of the property." The assessor estimated the market value at approximately 50 percent of the sum total of the original construction costs reported by KCPL. The Iatan I property was categorized as "distributable property," which is taxed for the benefit of all Missouri counties in which KCPL owns property, rather than as "local property," which is taxed for local benefit only.

The plaintiffs disputed the assessment and filed suit, claiming a loss in tax revenue due to the assessor's undervaluation of the KCPL property. In counts I and II, the plaintiffs alleged that the assessor violated a ministerial duty by failing to assess KCPL's reported construction costs as the "true value in money" of its property and to apply that figure when calculating the tax due.[4] In counts III and IV, they al-

1. Section 151.110 provides that an authorized officer of the railroad company shall "furnish to each county assessor in this state, wherever any local property owned or controlled by such company may be located, a separate report, under oath for the benefit of county and other local assessors, specifically describing all lands ... situated in such county, and ... owned or controlled by such company, on the first day of January in each year, and the true value in money thereof." § 151.110.1, RSMo 2000. For purposes of *ad valorem* taxes, electric utilities are taxed under the same rules as railroad companies and are required to render reports of their property in the same manner required of railroad compa-

nies. § 153.030.2–3. All statutory references are to RSMo 2000 unless otherwise indicated.

2. A copy of the form is attached on pages 15 and 16.

3. KCPL estimated the property value of construction work in progress at Iatan I and Iatan II by providing the costs of construction.

4. In count I, the plaintiffs sought a declaratory judgment as to whether reported construction costs should be assessed as the "true value in money." In count II, they sought a writ of mandamus compelling the assessor to

leged that the assessor violated a ministerial duty by failing to assess the entire Iatan I plant as "local property" for the benefit of the local school district because the plant was not generating electricity during the period it was offline due to the retrofit.[5]

After KCPL intervened, the assessor and KCPL filed motions to dismiss, which were overruled by the respondent. They then filed petitions for a writ of prohibition to prevent further proceedings against them. Preliminary writs issued. These writ petitions are the subject of the current proceeding.

## III. Standard of Review

 This Court has jurisdiction to issue original remedial writs. Mo. Const. art. V, § 4. "Prohibition is a discretionary writ that may be issued to prevent an abuse of judicial discretion [or] to avoid irreparable harm to a party." *State ex rel. Broadway–Washington Assoc. v. Manners,* 186 S.W.3d 272, 274 (Mo. banc 2006). For example, "prohibition may be appropriate to prevent unnecessary, inconvenient, and expensive litigation." *State ex rel. Linthicum v. Calvin,* 57 S.W.3d 855, 857 (Mo. banc 2001). Prohibition will lie if the plaintiff's petition "does not state a viable theory of recovery, and relator was entitled to be dismissed from the suit as a matter of law." *State ex rel. Barthelette v. Sanders,* 756 S.W.2d 536, 539 (Mo. banc 1988).

## IV. Analysis

In support of their petitions, KCPL and the assessor argue, in pertinent part, that (1) the plaintiffs lack standing to challenge the valuation or assessment of another's property; (2) an assessor is not under a ministerial duty to value property according to a company's reported costs; and (3) an assessor is not under a ministerial duty to assess a temporarily offline power plant as "local property."

## A. *Standing*

 In their first point, KCPL and the assessor argue that the plaintiffs lack standing to challenge the valuation or assessment of another's property. The question of whether a party has standing is a threshold issue that this Court reviews *de novo. Comm. for Educ. Equality v. State,* 294 S.W.3d 477, 484 (Mo. banc 2009).

## 1. Standing for Declaratory Judgment

 The longstanding rule in Missouri is that individual taxpayer plaintiffs lack standing to challenge other taxpayers' property tax assessments, as they are not injured personally by others' assessment calculations. *Id.*; *see also W.R. Grace & Co. v. Hughlett,* 729 S.W.2d 203, 206–7 (Mo. banc 1987) (finding that a plaintiff did not have standing to challenge excused tax obligations of others). Furthermore, neither a city nor a school district has standing to appeal or seek review of another's assessment by a county board of equalization. *City of Richmond Heights v. Bd. of Equalization,* 586 S.W.2d 338, 341–42 (Mo. banc 1979); *State ex rel. St. Francois County Sch. Dist. v. Lalumondier,* 518 S.W.2d 638, 643 (Mo.1975); *see also Bartlett v. Ross,* 891 S.W.2d 114, 116–17 (Mo. banc 1995) (holding, following *Lalumondier,* that just as school districts may not appeal an administrative decision, they may not appeal a refund judgment, absent

---

assess KCPL's property at the "true value in money."

**5.** In count III, the plaintiffs sought a declaratory judgment as to whether a temporarily offline power plant should be assessed as "local property." In count IV, they sought a writ of mandamus compelling the assessor to assess the entire Iatan I plant as local property.

a statute); *State ex rel. Brentwood Sch. Dist. v. State Tax Comm'n,* 589 S.W.2d 613, 614 (Mo. banc 1979) (holding that school districts do not have sufficient standing to appeal a tax assessment, following *Lalumondier,* and that they have no right to intervene in such an appeal because the county in which such districts are located represents whatever interests or rights the school districts may have).

■ In counts I and III of their petition, which seek declaratory relief, the plaintiffs allege that the assessor failed to comply with her legal duty to calculate the true value in money of KCPL's property and to assess the entire Iatan I plant as local property. These allegations—and extensive argument on this issue in the plaintiffs' briefs—reveal that the request for declaratory relief is, at least in part, a challenge to the past assessment of KCPL's property. To the extent that the declaratory judgment action constitutes a challenge to past assessments, the plaintiffs lack standing. Whether the taxpaying property owner is a corporation or a next-door neighbor (and the plaintiff a school district or an individual taxpayer), the principle that a third party is not permitted to challenge another's property tax assessment applies equally.

■ However, to the extent that the plaintiffs merely seek a declaration of their rights and the assessor's duties under the utility taxation statutes, they do have standing. By statute, Missouri courts "have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." § 527.010. A declaratory judgment is open to any person "whose rights, status, or other legal relations are affected by a statute." § 527.020. Moreover, the declaratory judgment statutes are "to be liberally construed," § 527.120, and administered to "terminate the controversy or remove an uncertainty." § 527.050. Rule 87 reinforces the provisions of the declaratory judgment statutes, providing that "anyone may obtain such relief in any instance in which it will terminate a controversy or remove an uncertainty." Rule 87.02(d).

■ In the context of an action for declaratory judgment, Missouri courts require the plaintiff to have a legally protectable interest at stake in the outcome of the litigation. *Ste. Genevieve Sch. Dist. R–II v. Bd. of Aldermen,* 66 S.W.3d 6, 10 (Mo. banc 2002). A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute. *Id.* Under Missouri law, school districts threatened with imminent unlawful deprivation of their funding have standing to seek declaratory judgment regarding a statutory interpretation that would lead to the deprivation. *State ex rel. Sch. Dist. of Independence v. Jones,* 653 S.W.2d 178, 189 (Mo. banc 1983).[6] Moreover, the school district has an interest in the methodology used by the assessor for future utility property assessments, particularly in relation to the assessment of local property, which is subject to the local school district tax levy. The individual taxpayers also have an interest, though attenuated, due to their status as taxpayers in the school district and the fact that the alleged failure of the assessor to comply with the utility taxation statutes, if true, would cost the district future tax revenue. *See Ste. Genevieve Sch. Dist.,* 66 S.W.3d at 10–11

---

6. Like *Jones,* the present case may be distinguished from *Lalumondier* in its treatment of standing on the ground that the school district purports to seek declaratory relief (here, regarding the assessor's statutory duties) rather than appeal from or direct review of a past assessment. The plaintiffs here are entitled to standing solely on the basis of this narrow distinction.

(finding that a taxpayer has standing to seek a declaratory judgment challenging an alleged expenditure of public funds because of his status as a taxpayer of the city and school district and because the redevelopment project would cost the district and city future tax revenue). The plaintiffs have a sufficient interest to seek a declaratory judgment as to the assessor's duties under the utility taxation statutes.

## 2. Standing for Mandamus Action

 In counts II and IV, the plaintiffs seek a writ of mandamus. The issue of whether a plaintiff has standing in a mandamus action requires a different analysis than in a declaratory judgment action. "A narrow window exists by which even a member of the general public may seek mandamus against a public official." *State ex rel. City of Cabool v. Texas County Bd. of Equalization*, 850 S.W.2d 102, 105 (Mo. banc 1993). "The principle at the heart of [the writ of mandamus] is that public officers are required to perform ministerial duties without any request or demand, and the entire public has the right to that performance." *State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 475 (Mo. banc 1992). As such, where the duty sought to be enforced is a simple, definite ministerial duty imposed by law, the threshold for standing is extremely low. *City of Cabool*, 850 S.W.2d at 105. If the assessor has a ministerial duty to value and assess the property in the manner alleged, then the plaintiffs have standing to bring a mandamus action.

### B. *True Value in Money*

In their second point, KCPL and the assessor argue that an assessor is not under a ministerial duty to value property according to a company's reported costs. As stated above, the plaintiffs have standing to maintain the declaratory judgment action to the extent that they seek a declaration as to the assessor's duties under the utility taxation statutes. However, they have standing to bring an action for mandamus compelling the assessor to perform her legal duties only if she has a ministerial duty to value and assess the property in the manner they allege. In counts I and II, the plaintiffs allege that the assessor had a ministerial duty to apply the "company's original cost" for the Iatan plants, as reported by KCPL, as the "true value in money" of those properties for assessment purposes, and that she breached that duty by valuing the property at approximately half that amount. KCPL and the assessor oppose this interpretation of the law and argue that an assessor has discretion in valuing property. The issue, then, is whether the duty sought to be enforced is a ministerial duty imposed by law or a discretionary duty requiring independent judgment.

 A ministerial duty is "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984). In contrast, a discretionary duty "necessarily requires the exercise of reason in the adoption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Id.*

The county assessor derives a property tax assessment from the report filed by the public utility company pursuant to section 151.110. The assessor is required by section 137.115 to assess the property at a given percentage of its "true value in money." [7] Although "true value in money" is

---

**7.** "[T]he assessor shall annually assess all personal property at thirty-three and one-third

percent of its *true value in money* as of Janu-

not defined by statute, Missouri case law defines "true value" as an estimate of the fair market value on the valuation date. *Hermel, Inc. v. State Tax Comm'n,* 564 S.W.2d 888, 897 (Mo. banc 1978). This definition has not changed from case to case. *Id.* However, the methods used and factors considered in determining a property's "true value" are subject to change depending on the circumstances of the valuation. *Id.* The methods employed and factors weighed by the utility company in completing its report are likely to vary from those considered by the assessor. It is expected that the assessor form an individual opinion as to the value of the property in light of the circumstances as a whole, as in this case where the property being valued was still under construction.[8] The utility company's report of its costs merely aids the assessor in determining the appropriate valuation and does not dictate the "true value in money."[9]

Moreover, several statutory provisions suggest the discretionary nature of the assessor's duty to value and assess property. Every assessor must take an oath of office specifically agreeing "to assess all of the real and tangible personal property in the county in which [s]he assesses *at what*

*[s]he believes to be the actual cash value."* § 53.030 (emphasis added). In addition, section 151.110.1 provides that the utility company's report listing its costs is to be filed "for the benefit of" the assessor. The assessor then is given 20 days to fill out the remaining portions of the report, including the columns titled "Market Value" and "Assessment." § 151.110.2. According to the statute, the document furnished to the state tax commission by the company shall list "the true value in money of all local property *as derived by the county assessor."* § 151.110.3 (emphasis added). The fact that the assessor "derives" the true value in money further suggests that she has discretion to make her own estimates.

Finally, the regulations promulgated by the state tax commission expressly state that "each assessor in the state *shall estimate* on Form 30, Schedule 14 the market value of property owned by ... public utility corporations ... doing business within [her] jurisdiction." 12 CSR 30–2.011(1) (emphasis added). An assessor exercises discretion when valuing property and is not under a ministerial duty to value property according to a company's reported costs. Therefore, the plaintiffs do not

ary first of each calendar year. The assessor shall annually assess all real property, including any new construction and improvements to real property and possessory interests in real property at the percent of its *true value in money* set in subsection 5 of this section." § 137.115 (Supp.2009) (emphasis added).

8. The record contains a letter issued by an agent of the state tax commission explaining that it is common practice in Missouri counties to estimate the market value of a construction work in process at approximately half the construction costs, because assets are not worth their total invested dollars at an incomplete stage.

9. Although section 151.110 requires the company to "specifically describ[e]" all lands owned or controlled by the company "and the

true value in money thereof," the standardized form supplied by the state tax commission does not provide an opportunity for the company to actually attest to the "true value in money" of the property. On the form, the first column, titled "Company's Original Cost," is to be filled out by the utility company's authorized agent, who then signs under oath that "the foregoing is a full, true and complete description and valuation of the property of said company." Once the report is furnished to the assessor, the second column titled "Market Value" and the third column titled "Assessment" then are completed entirely by the assessor. In filling out the required form, at no point did KCPL attest to the "true value in money" or market value of its property; in fact, three different terms are used, each of which may be different from the other.

have standing to bring a mandamus action.[10]

### C. *Local or Distributable Property*

 In their third point, KCPL and the assessor argue that an assessor is not under a ministerial duty to assess a temporarily offline power plant as "local property." The plaintiffs alleged in counts III and IV that the assessor had a ministerial duty to assess the entire Iatan I plant as "local" property subject to the school district's tax levy because the plant was not generating electricity while it was offline during the retrofit period and that she violated that duty.

Missouri statutes regarding the taxation of railroads and utilities classify such property as local or distributable for purposes of taxation. *State ex rel. Hatten v. Kansas City Power & Light Co.*, 365 Mo. 296, 281 S.W.2d 784, 786 (1955). "Local property" is assessed by the county and taxed on the individual levy of a school district, while "distributable property" is assessed by the state tax commission and taxed according to the average rates of all school districts within the county. *Southwestern Bell Telephone Co. v. Bond*, 595 S.W.2d 365, 367 (Mo.App.1980). For taxation of an electric company, the term "distributable property" is defined as "all the real or tangible personal property which is used directly in the generation and distribution of electric power." § 153.034.1. The term "local property," on the other hand, is defined as "all real and tangible personal property . . . not used directly in the generation and distribution of power." § 153.034.2. The definition of "distributable property" expressly excludes "property *held for purposes other than generation*

*and distribution of electricity.*" § 153.034.1 (emphasis added).

According to the plaintiffs, the Iatan I plant was offline on January 1 (the relevant date for valuation in a given year[11]) and, therefore, should have been assessed as "local property" because it was not being used to generate or distribute power at that time. However, the dispositive factor for making this determination is the purpose for which the property at issue is held, not its operational status on a particular date. It is clear that a coal-fired power plant is the type of property that is held for the purpose of generating and distributing electrical power and, therefore, would fall into the category of "distributable property" regardless of whether it is temporarily offline for purposes of an environmental retrofit. Accordingly, the assessor did not have a ministerial duty to assess the temporarily offline Iatan I power plant as "local property."

### V. Conclusion

The plaintiffs have no standing to seek review of an alleged underassessment by a county assessor, but they do have standing to pursue a declaratory judgment action regarding the assessor's duties under the utility taxation statutes. A county assessor has discretion to exercise independent judgment when valuing and assessing property under those statutes. Because the assessor in this case did not violate any definite, ministerial duty, the plaintiffs lack standing for purposes of mandamus. The plaintiffs have no further available legal remedy, and KCPL and the assessor's motions to dismiss should have been granted. The plaintiffs are not without remedy, however. Elected officials such as county assessors are accountable to the voters,

---

10. Because the duties at issue are discretionary, not only do plaintiffs lack standing for mandamus, but they also fail to state a viable theory of recovery.

11. Section 137.115 requires the assessor to annually assess all property "as of January first of each calendar year."

who may use the remedy of election if dissatisfied with the assessor's exercise of discretion.

The preliminary writs of prohibition are made permanent.

TEITELMAN, RUSSELL, WOLFF, FISCHER and STITH, JJ., and HAYES, Sp.J., concur. BRECKENRIDGE, J., not participating.

---

04/14/2009 09:16 8168583363 SANDY KROHNE CO CLRK PAGE 05

| STATE TAX COMMISSION OF MISSOURI | L O C A L A S S E S S M E N T S | FORM 30 SCHEDULE 14 |
|---|---|---|

**STATEMENT OF ALL PROPERTY ASSESSED BY LOCAL ASSESSOR AS PROVIDED SEC 153.030.**

COUNTY: PLATTE SHEET NO. OF

COMPANY: KCPL-KANSAS CITY POWER & LIGHT CO. TAX YEAR: 2008

| LINE NO | ITEM | TAX DISTRICT | COMPANY'S ORIG COST | MARKET VALUE | ASSESSMENT |
|---|---|---|---|---|---|
| 1 | REAL ESTATE | - - - see attached - - - | $26,808,298 134,445 | 25,009,770 | 7,646,952 |
| 2 | OFFICE FURN and FIXTURES | - - - see attached - - - | $110,293 244,738 | 147,375 | 49,120 |
| 3 | VEHICLES | - - - see attached - - - | $591,412 | 385,784 | 128,595 |
| 4 | GENERAL EQUIPMENT | - - - see attached - - - | 1,554,852 $1,890,897 | 948,876 | 316,260 |
| 5 | MATERIALS and SUPPLIES | - - - see attached - - - | $11,417,437 | 7,884,443 | 2,626,552 |
| 6 | MICROWAVE TOWERS | - - - see attached - - - | $0 | -0- | -0- |
| 7 | CWIP (KCPL) | - - - see attached - - - | $417,225,185 | 104,306,289 104,306,289 4,622,804 | 34,765,286 34,765,286 1,474,297 |
| | (KEPCo) | - - - see attached - - - | 18,491,213 | 4,622,804 | 1,540,781 |
| 8 | TOTAL FOR THE COUNTY | | $476,133,103 | 252,230,434 | 81,950,853 |
| 9 | TOTAL REAL PROPERTY | | 244,466,480 | 133,938,863 | 42,504,264 |
| 10 | TOTAL PERSONAL PROPERTY | | $281,666,623 | 118,291,571 | 39,426,591 |

*M+U surcharge add NC Real to total on bill to what Shannon gives Lee*

*(R = 34,857,309)*
*P = 36,306,067*
*71,163,376*

ASSESSMENT MADE BY LOCAL ASSESSOR

STATE OF MISSOURI
COUNTY OF PLATTE

STEVE SMITH, BEING DULY SWORN, SAYS HE IS THE MANAGER OF PROPERTY AND OTHER TAXES OF KCPL-KANSAS CITY POWER & LIGHT CO., AN ELECTRIC COMPANY AND THAT THE FOREGOING IS A TRUE, FULL AND COMPLETE DESCRIPTION AND VALUATION OF THE PROPERTY OF SAID ELECTRIC COMPANY IN THE COUNTY OF PLATTE CO IN THE STATE OF MISSOURI AND IN EACH MUNICIPAL TOWNSHIP, INCORPORATED CITY, TOWN OR VILLAGE THEREOF ON JANUARY 1, 2008.

VERONICA R. JONES
Notary Public-Notary Seal
State of Missouri, Jackson County
Commission # 06911397
My Commission Expires Jul 10, 2010

SUBSCRIBED AND SWORN TO BEFORE ME, THIS __26th__ DAY OF __March__ ,2008

COMPANY MUST FILE THIS SCHEDULE WITH ASSESSOR ON OR BEFORE APRIL 1. ASSESSOR MUST FILE WITH COMPANY, CLERK, AND STATE TAX COMMISSION PRIOR TO APRIL 20.

STATE TAX
COMMISSION OF
MISSOURI

LOCAL ASSESSMENTS

FORM 30
SCHEDULE 14

STATEMENT OF ALL PROPERTY ASSESSED BY LOCAL ASSESSOR AS PROVIDED SEC 153.030.

COUNTY: PLATTE

SHEET NO. OF

COMPANY: KCPL-KANSAS CITY POWER & LIGHT CO.

TAX YEAR: 2010

| LINE NO | ITEM | TAX DISTRICT | COMPANY'S ORIG COST | MARKET VALUE | ASSESSMENT |
|---|---|---|---|---|---|
| 1 | REAL ESTATE | ··· see attached ··· | $92,077,830 | 14,388,788 | 29,863,627 |
| 2 | OFFICE FURN and FIXTURES | ··· see attached ··· | $155,418 | 70,988 | 23,660 |
| 3 | VEHICLES | ··· see attached ··· | $780,537 | 339,154 | 113,040 |
| 4 | GENERAL EQUIPMENT | ··· see attached ··· | $5,497,211 | 3,670,608 | 1,206,748 |
| 5 | MATERIALS and SUPPLIES | ··· see attached ··· | $17,694,755 | 12,187,468 | 4,062,082 |
| 6 | MICROWAVE TOWERS | ··· see attached ··· | $0 | | |
| 7 | CWIP | ··· see attached ··· REAL | 454,256,901 | 227,128,450 | 72,681,104 |
| | | PERSONAL | 454,256,902 | 227,128,450 | 75,701,942 |

\* KEPCO reported separately.

| 8 | TOTAL FOR THE COUNTY | | $1,024,719,654 | 564,863,906 | 183,652,173 |
| 9 | TOTAL REAL PROPERTY | | 546,334,731 | 321,517,238 | 102,544,731 |
| 10 | TOTAL PERSONAL PROPERTY | | 478,384,823 | 243,346,668 | 81,107,442 |

ASSESSMENT MADE BY LOCAL ASSESSOR

STATE OF MISSOURI
COUNTY OF PLATTE

STEVE SMITH, BEING DULY SWORN, SAYS HE IS THE MANAGER OF PROPERTY AND OTHER TAXES OF KCPL-KANSAS CITY POWER & LIGHT CO., AN ELECTRIC COMPANY AND THAT THE FOREGOING IS A TRUE, FULL AND COMPLETE DESCRIPTION AND VALUATION OF THE PROPERTY OF SAID ELECTRIC COMPANY IN THE COUNTY OF PLATTE CO IN THE STATE OF MISSOURI AND IN EACH MUNICIPAL TOWNSHIP, INCORPORATED CITY, TOWN OR VILLAGE THEREOF ON JANUARY 1, 2010.

VERONICA R. JONES
Notary Public Notary Seal
State of Missouri, Jackson County
Commission # 06911397
My Commission Expires Jul 10, 2010

Veronica R. Jones

SUBSCRIBED AND SWORN TO BEFORE ME, THIS __31st__ DAY OF _March_ ,2010

COMPANY MUST FILE THIS SCHEDULE WITH ASSESSOR ON OR BEFORE APRIL 1. ASSESSOR MUST FILE WITH COMPANY, CLERK, AND STATE TAX COMMISSION PRIOR TO APRIL 20.

2

A80